**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

June Hall, on behalf of herself and all
others similarly situated,

          Plaintiff,

    v.

Xanadu Marketing, Inc. d/b/a Houses
Into Homes,

          Defendant.

Case No. 1:22-cv-03795-MHC

## PLAINTIFF'S MOTION TO DISMISS DEFENDANT'S COUNTERCLAIMS AND MEMORANDUM OF LAW

i

# Table of Contents

Introduction ................................................................................................1

Procedural History ......................................................................................2

Factual Background .....................................................................................3

Argument.....................................................................................................5

  I.  Defendant's claims fail under Rule 12(b)(6)......................................5

    A.  Procedural Standard. .....................................................................5

    B.  Plaintiff's initial, non-operative complaint is a legal nullity. ......................6

    C.  Defendant fails to state a claim for fraud. ....................................7

      1.  Defendant fails to allege justifiable reliance—and even disclaims any reliance on Plaintiff's representations. ..........................................7

      2.  Even if Defendant adequately alleges that Plaintiff engaged in "fraud," it does not adequately allege it was harmed by the fraud..................................11

    D.  Defendant fails to state a claim for breach of contract. .............................15

      1.  It is unclear what type of claim Defendant is even attempting to allege through its "breach of contract" counterclaim. ...............................15

      2.  Defendant fails to allege the existence of an enforceable contract..........17

      3.  Even if a contract existed, Defendant fails to allege a breach of the contract. ...................................................................................19

      4.  Even if a contract existed, and Plaintiff breached the contract, Defendant does not identify any harm or entitlement to damages proximately caused by the alleged breach. .........................................................................21

  II.  Defendant fails to allege any entitlement to the relief it seeks. .....................23

Conclusion .................................................................................................25

**Introduction**

Xanadu Marketing, Inc. d/b/a Houses Into Homes's ("Defendant") attempt to inject counterclaims into this case—premised on its disagreement with Plaintiff's allegations in a non-operative complaint—rises beyond mere zealous advocacy by its counsel; it instead is an internally inconsistent shotgun pleading which advances claims that plainly fail to meet minimum standards under this Circuit's caselaw. Defendant's deficiencies include that it: (1) simultaneously suggests that it sent no communications to Plaintiff, then later alleges that it did as part of the basis for its claims; (2) fails to allege the elements necessary to assert a fraud claim; (3) fails to allege the existence of a contract; (4) fails to allege an actionable breach of contract; and (5) fails to identify an actionable claim for damages under either a fraud or contract theory. Even if Defendant's allegations were entirely accepted as true—despite Defendant knowingly making false representations, *see infra* n.2—Defendant simply fails to allege a single cogent theory through which it could seek and recover damages, despite alleging frivolous and internally inconsistent allegations in an effort to do so.

For these reasons, and all of the reasons explained below, this Court should grant Plaintiff's motion and dismiss Defendant's counterclaims with prejudice.

**Procedural History**

On September 21, 2022, Plaintiff filed a class action lawsuit against Defendant alleging that it violated the Telephone Consumer Protection Act ("TCPA") by (1) delivering telemarketing messages without required identifying disclosures; (2) delivering telemarketing messages after the recipient instructed Defendant to stop; and (3) delivering telemarketing messages to residential telephone numbers registered to the National Do-Not-Call Registry, absent prior express written consent. *See generally* ECF No. 1. On September 27, 2022, Plaintiff served that complaint on Defendant. ECF No. 6.

Following initial correspondence between Plaintiff's counsel and Defendant's in-house counsel, on October 6, 2022, Plaintiff filed an amended complaint narrowing Plaintiff's claims. *See* ECF No. 4. On October 17, 2022, counsel for Defendant first entered its appearance and requested an extension of time to respond to Plaintiff's amended complaint, ECF No. 8, followed by a second request for extension a month later, on November 16, 2022. ECF No. 11. Finally, on December 1, 2022, Defendant filed its counterclaims against Plaintiff, along with a motion to dismiss Plaintiff's amended complaint. *See* ECF Nos. 13-14.

## Factual Background[1]

Defendant alleges that Plaintiff is a "serial TCPA litigant"—despite having filed no TCPA claims in her life aside from this case[2]—and alleges that she manufactured a TCPA claim against Defendant and filed a fraudulent claim approximately seven months after receiving a series of text messages from a then-unknown sender. ECF No. 14 at ¶¶ 7-8.

In advancing these allegations, Defendant alleges that on February 2, 2022, at approximately 5 a.m., Plaintiff submitted her name, her phone number, and an email address to the website renttoownhomefinder.com, and then, at the same time, additionally submitted two separate submissions which included a different name,

---

[1] Plaintiff denies the veracity of Defendant's factual allegations, but because of the procedural posture in this case, Defendant's allegations must be accepted as true. For the sake of brevity, Plaintiff will not continuously refer to these allegations as "alleged" facts, nor will she argue them at this juncture. Plaintiff's subsequent arguments are not an admission that Defendant's allegations are true or accurate.

[2] Defendant's assertion that Plaintiff is a serial TCPA litigant is undercut by the fact that Defendant identifies zero TCPA cases that Ms. Hall has filed, and Plaintiff's counsel is aware of none, following a diligent search of PACER records nationwide. *See, e.g.*, Ex. A (showing search results for PACER searches involving (1) "June Hall" as a TCPA plaintiff; (2) "June Ann Hall" as a plaintiff; and (3) "June A Hall" as a plaintiff). This court may take judicial notice of these PACER search results as they are "not subject to reasonable dispute" and can be accurately . . . determined from sources whose accuracy cannot reasonably be questioned." *Mathis v. United States Gov't*, No. 2:18-CV-417-WKW, 2018 U.S. Dist. LEXIS 71193, at *2 n.2 (M.D. Ala. Apr. 26, 2018); *see also D & M Carriers, LLC v. M/V Thor Spirit*, No. 11-80722-Civ, 2012 U.S. Dist. LEXIS 192764, at *2 (S.D. Fla. Sep. 18, 2012).

her phone number, and the same email address. *Id.* at ¶¶ 9-11, 15-16. Defendant alleges that these simultaneous submissions came from different IP addresses geolocated to Atlanta, Georgia. *Id.* at ¶¶ 15-17. As a result, Defendant contends that Plaintiff "submitted these leads to solicit additional text messages and manufacture TCPA claims, while attempting to conceal her efforts by using a false name and email address." *Id.* at ¶ 28.

As part of these submissions, Defendant contends that Plaintiff entered into a binding contract with it *and at least 57 other entities* due to Plaintiff's submission of information to renttoownhomefinder.com. *Id.* at ¶¶ 12-14; *see also* Ex. B (renttoownhomefinder.com's list of partners).[3] As a result, Defendant contends that Plaintiff committed tortious fraud against it and breached her contract with it because Plaintiff submitted her information to renttoownhomefinder.com using two different names. *See generally* ECF No. 14 at ¶¶ 37-50. Defendant alleges that it was harmed by its employees responding to Plaintiff's filing of a complaint and its related investigation, and that it is accordingly entitled to recover attorneys' fees. *Id.* at ¶¶ 44, 49. Defendant additionally alleges both that it is not responsible for the delivery of the text messages at issue to Plaintiff, *see id.* at 1 n.1, but also that Defendant

---

[3]    The Court may take judicial notice of website excerpts referenced by Defendant's counterclaims. *See, e.g.*, *Moore v. Trader Joe's Co.*, No. 4:18-cv-04418-KAW, 2019 U.S. Dist. LEXIS 105379, at *6 (N.D. Cal. June 24, 2019).

"sent [Plaintiff] marketing text messages she requested." *Id.* at ¶ 40. Defendant does not, however, clarify whether the "requested" text messages it delivered are different from those identified in her amended complaint.

## Argument

## I.    Defendant's claims fail under Rule 12(b)(6).

### A.    Procedural Standard.

In evaluating a Rule 12(b)(6) motion to dismiss, a court must determine whether the complaint contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).[4] A complaint need not provide "detailed factual allegations," but it must provide factual allegations sufficient to set forth and entitlement to relief. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "Under *Twombly* and *Iqbal*, however, only plausible-and not merely possible-claims survive a Rule 12(b)(6) motion to dismiss." *Almanza v. United Airlines, Inc.*, 851 F.3d 1060, 1074 (11th Cir. 2017).

Under Rule 9(b), "the circumstances constituting fraud . . . shall be stated with particularity." Rule 9(b) is satisfied where the party alleges "(1) precisely what statements were made in what documents or oral representations or what omissions

---

[4]    Unless otherwise indicated, all internal citations are omitted and all emphasis is added.

were made, and (2) the time and place of each such statement and the person responsible for making (or, in the case of omissions, not making) same, and (3) the content of such statements and the manner in which they misled the plaintiff, and (4) what the defendants obtained as a consequence of the fraud." *United States ex rel. Clausen v. Lab. Corp. of Am.*, 290 F.3d 1301, 1310 (11th Cir. 2002).

**B.      Plaintiff's initial, non-operative complaint is a legal nullity.**

Defendant's counterclaims are largely premised on an attack against Plaintiff's original complaint, which has no bearing on the claims before the Court. In fact, "Plaintiff's original Complaint is a nullity after the filing of the Amended Complaint." *Campbell v. Resurgent Capital Servs., L.P.*, No. 1:20-CV-3009-JPB-JSA, 2020 U.S. Dist. LEXIS 254262, at *4 (N.D. Ga. Nov. 9, 2020) (Anand, M.J.); *see also Pintado v. Miami-Dade Hous. Agency*, 501 F.3d 1241, 1243 (11th Cir. 2007) (an "amended pleading supersedes the former pleading; the original pleading is abandoned by the amendment, and is no longer a part of the pleader's averments against his adversary"); *Tondalo v. Pro Disposal, LLC*, No. 4:22-cv-33, 2022 U.S. Dist. LEXIS 81106, at *3 (S.D. Ga. May 4, 2022) (same, collecting cases).

As a result, Defendant's counterclaims—seeking recovery of "the cost of attorneys' fees and court costs incurred in the defense of this lawsuit," ECF No. 14 at ¶ 44, 50—necessarily should not relate to Plaintiff's nullified original allegations,

particularly because Defendant did not retain its counsel until after Plaintiff filed the *amended* complaint. *See* ECF Nos. 4, 8.

### C. Defendant fails to state a claim for fraud.

To state a viable claim for fraud under Georgia law, a plaintiff must allege "(1) a material misrepresentation by the defendant, (2) the defendant's knowledge that the information is false (scienter), (3) the defendant's intention to induce the plaintiff to act or to refrain from acting, (4) justifiable reliance by the plaintiff, and (5) damage to the plaintiff." *Scalzo v. Jankauskas*, No. 1:18-CV-4571-MHC, 2021 U.S. Dist. LEXIS 179257, at *38 (N.D. Ga. May 4, 2021) (Cohen, J.). The damages must be "proximately caused by the representation." *Cummings v. Nationstar Mortg. LLC*, No. 1:16-cv-2000-WSD, 2017 U.S. Dist. LEXIS 29384, at *9 (N.D. Ga. Mar. 2, 2017) (Duffey Jr., J.). Defendant's fraud claim does not satisfy these elements.

### 1. Defendant fails to allege justifiable reliance—and even disclaims any reliance on Plaintiff's representations.

Fatal to Defendant's claim for fraud is that Defendant disclaims reliance on Plaintiff's representations. Specifically, Defendant states—both through its counterclaims and its motion to dismiss Plaintiff's amended complaint—that Plaintiff sued the wrong entity, and therefore, Defendant did not send the communications at issue. *See* ECF No. 14 at 1 n.1; ECF No. 13 at 1 n.1. This admission alone is fatal to Defendant's claim for reliance.

7

The Eastern District of Arkansas recently dismissed similar counterclaims in *Hastings v. SmartMatch Ins. Agency, LLC* where a defendant alleged that a TCPA plaintiff committed fraud by using a false name when providing consent to be contacted. No. 4:22-cv-00228-LPR, 2022 U.S. Dist. LEXIS 158491 (E.D. Ark. Sep. 1, 2022). There, like here, the defendant disavowed sending the messages at issue, while simultaneously alleging that it was harmed by relying on the alleged misrepresentations, resulting in the dismissal of those counterclaims:

> [W]ith respect to the cost of defending against Mr. Hastings's TCPA lawsuit, SmartMatch's problems run deeper. SmartMatch does not allege that it called Mr. Hastings or caused any other entity to call Mr. Hastings. Indeed, SmartMatch's allegations seem to suggest that Mr. Hastings was called by a third party that SmartMatch does not control. The take-home point here is that, according to SmartMatch, it did not place the call (or cause the call to be placed) that gave rise to the alleged TCPA violation. That means SmartMatch cannot claim the defense of a TCPA lawsuit as damages "suffered as a result of [its] reliance" on Mr. Hastings's alleged misrepresentations.

*Id.* at *14.

Thus, for Defendant to argue that "Plaintiff wrongly named [Defendant] in this Action," and to accordingly deny sending any of the text messages at issue, it necessarily follows that it could not have "relied on [Plaintiff's] misrepresentations and her consent to receive text messages." *Compare* ECF No. 14 at 1 n.1 *with id.* at ¶¶ 20, 40.

Even if Defendant were to clarify its internally inconsistent position on

whether it, or a third party, communicated with Plaintiff, Defendant still fails to allege detrimental reliance. Rather, Defendant alleges only that Plaintiff provided a "false name" and email address as its claim for fraud. ECF No. 14 at ¶ 11. But Defendant did not rely on or use any name in its (or the third party's) communications with Plaintiff. *See generally id.* Nor did Defendant allege that Plaintiff's submission of both her real name and a "false name" influenced Defendant's (or the third party's) decision to deliver the communications at issue. *Id.* Defendant does not plead that it (or a third party) would not have communicated with Plaintiff had she provided only her actual name. *Id.* Rather, Defendant alleges merely that it (or the third party) communicated with Plaintiff after she provided her real name contemporaneous with her providing an additional "false name." *Id.* at ¶¶ 38-40. In sum, Defendant alleges zero communications that reference either Plaintiff's name or the "false name," *see* ECF No. 4 at ¶ 12, and Defendant does not allege that it used either Plaintiff's name or a false name for the purposes of any of its (or a third party's) telemarketing communications with her. *See generally* ECF No. 14. Defendant simply fails to allege any action or inaction it took because of Plaintiff's submission of two names, and as a result, this Court should dismiss Defendant's counterclaim for fraud on this basis alone. *Scalzo*, 2021 U.S. Dist. LEXIS 179257, at *39 ("the Court fails to see how it demonstrates justifiable

reliance as Scalzo has failed to allege that he has taken any action or refrained from taking action as the result of any alleged fraudulent statement, let alone that such (in)action was justifiable.").

On the other hand, if Defendant is instead alleging that the "fraud" was Plaintiff's submission of a consent form when she didn't *really* want to receive messages from Defendant, such a theory strains credulity and resembles speculative conjecture more than a "plausible" theory. *See Almanza*, 851 F.3d at 1074. At its core, Defendant is one of 58 entities—plus an unknown number of affiliates—identified on a separate hyperlinked URL on a clickwrap agreement that Defendant contends that Plaintiff agreed to. *See* Ex. B. So, if Defendant suggests that the "fraud" was simply that Plaintiff didn't *really* want to receive messages from each of those 58+ entities, it fails to cogently articulate that, and such an allegation would be purely subjective speculation and a far cry from alleging actionable fraud under Rule 9(b). *Accord Viera v. BASF Catalysts LLC*, No. 5:16-cv-1-Oc-30PRL, 2016 U.S. Dist. LEXIS 47787, at *7 (M.D. Fla. Apr. 8, 2016) ("Essentially, while Rule 9(b) permits scienter to be demonstrated by inference, this must not be mistaken for license to base claims of fraud on speculation and conclusory allegations. An ample factual basis must be supplied to support the charges.").

Because Defendant fails to articulate a coherent theory of reliance on any

alleged misrepresentation, this Court should dismiss its fraud counterclaim.

**2.    Even if Defendant adequately alleges that Plaintiff engaged in "fraud," it does not adequately allege it was harmed by the fraud.**

Even if this Court were to credit Defendant's fraud allegations and find that it adequately alleges reliance, Defendant fails to allege proximate harm as a result of any "fraud," and fails to allege any damages to which it may be entitled to recover. Specifically, Defendant alleges that the purported fraud caused it harm in the form of "financial loss, including but not limited to the employee resources, costs, and legal fees associated with responding to [Plaintiff]'s allegations and defending against her frivolous and fraudulent claims." ECF No. 14 at ¶ 44.[5] However, Defendant's claim for attorney's fees is factually and legally invalid, and its claimed harmful expenditure of employee resources is facially *de minimis*.

First, Defendant seeks damages in the form of its attorneys' fees, but in doing so, it does not articulate a viable claim for entitlement to those fees. As an initial issue, Defendant did not incur attorneys' fees because of any "fraud," because

---

[5]    Defendant curiously omits that it did not retain counsel until well-after Plaintiff filed her amended complaint—the operative complaint at issue. *Compare* ECF No. 4 (amended complaint filed on October 6, 2022) *with* ECF No. 8 at ¶ 3 (noting that, on October 17, 2022, "Defendant recently retained the undersigned counsel to defend this putative class action lawsuit" and that it had not completed its investigation of the allegations). Defendant likely omitted this information in an attempt to bolster its claim for damages above a *de minimis* amount.

Defendant's counsel was retained *after* Plaintiff filed her amended complaint. *See supra* n.5. So, without incurring legal fees to respond to Plaintiff's alleged "fraud," Defendant's claim that it was harmed by incurring attorneys' fees as a result of Plaintiff's "fraud" is without a basis in fact.[6] And even if that were not the case, it would not matter; incurring fees to defend a lawsuit does not support a claim for damages as a result of fraudulent representations. *Accord Chevron Corp. v. Donziger*, 2013 U.S. Dist. LEXIS 105878, at *12 (S.D.N.Y. July 29, 2013) ("Thus, the allegations that Chevron made misrepresentations in lawsuits it brought against Mr. Donziger and that Mr. Donziger, though aware of their alleged falsity, incurred expenses defending those lawsuits does not state a legally sufficient fraud claim. Mr. Donziger does not allege that the defense costs he seeks to recover were incurred because he was deceived by and relied upon Chevron's alleged falsehoods.").

Next, to the extent that Defendant instead seeks to collect damages in the form of its employees' time incurred in responding to Plaintiff's initial complaint—which Defendant does not enumerate, describe, or seek as relief through its counterclaims—such a claim also fails. An allegation of a generic expenditure of limited employee time is not traceable to any alleged fraud and is nevertheless too

---

[6]     And, as explained *infra* Argument § II, Defendant failed to articulate a separate basis for entitlement to attorney's fees, so it may not recover fees anyway.

speculative and attenuated to satisfy any applicable pleading standard. *See, e.g.*, *Salcedo v. Hanna*, 936 F.3d 1162, 1168 (11th Cir. 2019) (finding that allegation of "time wasted only generally" fails to state a concrete harm "[i]n the absence of a specific time allegation."). As explained in *Atkinson v. Pro Custom Solar LLC*, where a court granted summary judgment against a counterclaiming defendant who alleged that a TCPA plaintiff (1) fraudulently provided a false name and (2) caused the defendant to incur wasted employee time:

> Time spent pitching possible sales of solar panels is not an injury. This is what Momentum does day in and day out in an attempt to inform prospective buyers about its product and convince them to invest in its solar panels. None of Momentum's sales pitches guarantee a future business relationship. This is not just an issue of being unable to quantify damages; Momentum's theory of injury, loss, and damages is pure speculation. If damages "are too remote, too uncertain, or purely conjectural, they cannot be recovered." *Arthur Andersen & Co. v. Perry Equip. Corp.*, 945 S.W.2d 812, 816 (Tex. 1997). Because Momentum has no evidence of injury and damages, Atkinson is entitled to summary judgment on all three of its counterclaims.

Case No. SA-21-CV-00178-OLG, 2022 U.S. Dist. LEXIS 158629, at *31-32 (W.D. Tex. Sept. 1, 2022).

Generic allegations that Defendant expended minimal time to initially respond to a complaint—whether by attorneys or employees—are also insufficient:

> Second, Defendant has not only failed to state what misrepresentations it relied upon, it has also failed to state *how* it relied upon any misrepresentation by Stratton, or what 'was obtained or given up thereby.' To the extent Defendant contends that defending a lawsuit

could satisfy this element of its claim for fraud and deceit, the court rejects that contention. Defendant has provided no authority to support such a contention, and, quite simply, it does not make sense.

*United States EEOC v. Sleeveco, Inc.*, No. 2:08-CV-00106-SSC, 2008 U.S. Dist. LEXIS 130629, at *16 (N.D. Ga. Dec. 8, 2008) (Cole, M.J.); *accord Adana Investing, Inc. v. Wells Fargo Bank*, No. 1:16-cv-21562-UU, 2017 U.S. Dist. LEXIS 219596, at *47-48 (S.D. Fla. Apr. 7, 2017) ("To assert an unclean hands doctrine defense . . . the defendant must show that it was personally injured by the plaintiff's wrongful conduct. . . . Defendants' argument that any incurred damages stem from their attorney's fees in defending this lawsuit is simply unsupported in law.").

Georgia courts also look at such a frivolous claim for damages with great skepticism:

> The only damages alleged by appellee are the expenses it has incurred as the result of defending the instant lawsuit. Such damages are unrelated to any fraud allegedly perpetrated by appellant prior to the filing of his complaint, and they cannot support appellee's fraud claim. The gravamen of appellee's allegations is that it has been required to defend itself against an allegedly spurious claim asserted by appellant. While in an independent context those allegations might be deemed to state a claim for malicious use of process, such a claim cannot be predicated upon appellant's mere filing of the main action and therefore cannot be made as a counterclaim in the subject lawsuit. Appellee cannot avoid this rule of law merely by characterizing its claim for expenses incurred in defending against appellant's claim as one which is based upon fraud. Appellee's legal remedy is to await the conclusion of the instant litigation, and, if appropriate, then to pursue its claims concerning malicious use of process and stubborn litigiousness in a separate action.

14

*Barnes v. White Cty. Bank*, 170 Ga. App. 681, 682-83 (1984).

Defendant's counterclaim allegations boil down to it seeking damages because it responded (informally) to Plaintiff's original complaint, and subsequently retained counsel to litigate different claims than those it protests through its counterclaim. Nothing about this is an articulable harm tied to Plaintiff's alleged fraud. Defendant fails to identify any harm it incurred with sufficient specificity to satisfy Rule 9(b) (or even Rule 8(a)'s more lenient standard), fails to articulate its alleged expenditure of "employee resources," and fails to connect any of those harms to Defendant's allegation: that Plaintiff provided it with two sets of names associated with the same phone number when it alleges that she submitted consent forms to a third party entity on an unrelated website. And—highlighting the frivolity of these allegations—Defendant advances these arguments while it claims not to have been responsible for the communications at issue anyway. For all of these reasons, this Court should dismiss Defendant's fraud claims with prejudice.

### D.    Defendant fails to state a claim for breach of contract.

#### 1.    It is unclear what type of claim Defendant is even attempting to allege through its "breach of contract" counterclaim.

As an initial matter, it is challenging to address Defendant's counterclaim of breach of contract because Defendant fails to clearly articulate the theory of breach

it advances. Specifically, Defendant characterizes "counterclaim two" as a "breach of contract" claim, but subsequently in its prayer for relief, suggests only that it is seeking damages caused by Plaintiff's "breach of the implied covenant of good faith and fair dealing," and seemingly abandons its claim for breach of express contract in the midst of its filing. ECF No. 14 at 9-10. Although claims for breach of the implied covenant of good faith and fair dealing necessarily require a breach of express contract under Georgia law, *see infra* Argument § I.D.3, it is nevertheless an independent claim from a breach of express contract. *See Clark v. Aaron's, Inc.*, 914 F. Supp. 2d 1301, 1308 (N.D. Ga. 2012) ("causes of action for breach of the implied covenant and breach of contract . . . are separate and distinct[.]") (Story, J.).

Defendant's attempt to splice multiple causes of action in a single count is improper, as filing multiple causes of action within a single count constitutes impermissible shotgun pleading and warrants dismissal. *See Weiland v. Palm Beach Cty. Sheriff's Office*, 792 F.3d 1313, 1322-23 (11th Cir. 2015) ("The third type of shotgun pleading is one that commits the sin of not separating into a different count each cause of action or claim for relief."); *In Dime We Tr., RLT v. Armadillo Distribution Enters.*, No. 8:21-cv-1967-SDM-AAS, 2022 U.S. Dist. LEXIS 175008, at *11-12 (M.D. Fla. Aug. 10, 2022) (dismissing complaint where certain counts "confusingly attempts to merge various claims.").

16

**2.      Defendant fails to allege the existence of an enforceable contract.**

Even if Defendant clarified what kind of contract claim it actually advances, it would not matter, because Defendant fails to allege the existence of an enforceable contract. "The essential elements of a contract under Georgia law are: (1) parties able to contract; (2) consideration; (3) a subject matter upon which the contract can operate; and (4) the assent of the parties to the terms of the contract." *Crystal Steel Fabricators, Inc. v. AMEC Foster Wheeler Programs, Inc.*, 349 F. Supp. 3d 1364, 1368 (N.D. Ga. 2017) (Cohen, J.). Defendant fails to allege an exchange of mutual consideration, fails to describe the subject matter of the contract, and fails to allege that Defendant agreed to the terms of the "contract."

Regarding the exchange of consideration, Defendant simply does not address this element through its counterclaim allegations, nor can it, because binding Eleventh Circuit caselaw acknowledges that any consent Plaintiff provided through her alleged submission to renttoownhomefinder.com was given gratuitously, and as a result, is not contractual.

Specifically, in *Medley v. Dish Network, LLC*, the Eleventh Circuit evaluated whether a consumer could revoke consent to receive automated calls if the original consent was "given in a bargained-for contract." 958 F.3d 1063, 1070 (11th Cir. 2020). The Circuit Court concluded that contractual consent could not be unilaterally

revoked, and in doing so, contrasted the allegations in *Medley* with those in *Osorio*

*v. State Farm Bank, F.S.B.*, 746 F.3d 1242 (11th Cir. 2014). In *Osorio*, the Eleventh

Circuit addressed whether consent could be unilaterally revoked if it was given

gratuitously—in that case, a credit application—and concluded that gratuitous

consent *could* be revoked. *Id.* at 1255; *see also Medley*, 958 F.3d at 1070. In doing

so, the Eleventh Circuit twice emphasized that providing consent to be contacted as

part of an application or submission form is "gratuitous" and not "contractual." *Id.*

The facts at issue here are even further removed and less contractual than a

credit card application. First, there is no exchange of consideration, as Defendant

identifies only a consent form to receive promotional messages—which a consumer

accepts *gratuitously*—as the "contract." ECF No. 14 at ¶ 12. Second, Defendant does

not even attempt to suggest that Plaintiff exchanged consideration with *Defendant*

*and 57 other entities "including their affiliates"* as part of the consent form Plaintiff

allegedly submitted to a third party. *See* Exs. B-C.[7]

---

[7]    To the extent Defendant seeks to advance a convoluted "third party
beneficiary" claim for breach of contract, such allegations are entirely absent in its
counterclaims. *See Kerfoot v. FNF Servicing, Inc.*, No. 1:13-cv-33 (WLS), 2013 U.S.
Dist. LEXIS 153849, at *18 (M.D. Ga. Oct. 25, 2013) ("To assert a third-party
beneficiary breach of contract claim under Georgia law, however, the plaintiff must
be the intended beneficiary of the contract. By failing to identify violated contract
terms or provisions that confer standing, the Kerfoots have failed to state a claim for
relief.").

Similarly deficient, Defendant fails to identify "a subject matter upon which the contract can operate." As explained in greater detail *infra* Argument § I.D.3, Defendant does not articulate the terms of the contract or the intended scope of the contract, and—as explained below—relatedly fails to explain what contract terms Plaintiff breached.

Lastly, Defendant does not allege that it assented to the terms of the "contract." This failure to allege mutual assent additionally dooms Defendant's counterclaim. *See, e.g.*, *Kellogg v. Fannie's Inc.*, No. 1:18-CV-1929-MHC, 2019 U.S. Dist. LEXIS 247300, at *10 (N.D. Ga. Jan. 11, 2019) ("Fannie's alleges only that Kellogg received policies, not that she agreed to be bound by their contents or assented to a contract. These allegations are insufficient.") (Cohen, J.).

Because Defendant fails to allege the existence of a contract, the Court should dismiss its breach of contract claim with prejudice.

### 3.    Even if a contract existed, Defendant fails to allege a breach of the contract.

Even if the Court found that Defendant alleges the existence of an actionable contract, Defendant does not allege a breach of the contract. Defendant's lone allegation as to breach of contract is as follows: "Ms. Hall breached her agreement and the implied duty of good faith and fair dealing by providing consent under a false name and then suing Xanadu for sending the very text messages she requested."

ECF No. 14 at ¶ 48.

"[U]nder Georgia law, a claim for breach of the duty of good faith and fair dealing cannot stand as an independent cause of action apart from an underlying claim for breach of contract." *Irving v. Bank of Am.*, 497 F. App'x 928, 930 (11th Cir. 2012). "General allegations of breach of the implied duty of good faith and fair dealing not tied to a specific contract provision are not actionable." *Am. Casual Dining, L.P. v. Moe's Sw. Grill, L.L.C.*, 426 F. Supp. 2d 1356, 1370 (N.D. Ga. 2006) (Thrash, J.). Rather, "to state a claim for breach of the implied covenant, the plaintiff must be found to have stated a claim for breach of contract (since the implied covenant cannot be breached independently of an express contract term)." *Id.*

Defendant identifies no express contract term that Plaintiff breached. Instead, Defendant alleges that Plaintiff breached the contract by "providing consent under a false name and then suing Xanadu for sending the very text messages she requested." ECF No. 14 at ¶ 48. *Even if that were true*, Defendant fails to identify any contractual term that Plaintiff breached by "providing consent under a false name." Failing to identify the contract, failing to attach the contract, and failing to "stat[e] with specificity the contract language upon which Defendant relies . . . [is] woefully insufficient to state a cause of action upon which relief can be granted." *Karitanyi v. Seterus Inc.*, No. 1:17-CV-03432-TWT-JFK, 2018 U.S. Dist. LEXIS 65333, at *9

(N.D. Ga. Feb. 5, 2018) (dismissing breach of contract claim) (King, J.).

Because Defendant identifies no breach of any contract term, this Court should dismiss its breach of contract counterclaim.

### 4. Even if a contract existed, and Plaintiff breached the contract, Defendant does not identify any harm or entitlement to damages proximately caused by the alleged breach.

Lastly, even if Defendant adequately alleged the existence of a contract and a breach of the terms of that contract, it fails to adequately allege that it was harmed by Plaintiff's breach. Akin to its inadequate allegations supporting its fraud claim, Defendant suggests that the expenditure of its employee time responding to Plaintiff's original complaint, and the expenditure of attorney's fees in defense of this action. These claims fail for the same reasons discussed *supra* Argument § I.C.2.

To the extent that Defendant instead seeks to collect "damages" in the form of its employees' time incurred in responding to Plaintiff's initial complaint—which Defendant does not enumerate, describe, or seek through its counterclaims—such a claim also fails. First, the expenditure of limited employee time is not traceable to any alleged breach. *See Wausau Underwriters Ins. Co. v. Danfoss, LLC*, No. 2:14-CV-14420-ROSENBERG/LYNCH, 2015 U.S. Dist. LEXIS 168069, at *49 (S.D. Fla. Dec. 16, 2015) ("damages generally must be proximately caused by the defendant's alleged breach."). And Defendant's employees' response to Plaintiff's

original complaint—the "employee time" ostensibly alleged but insufficiently pled—is facially *de minimis*.[8] *See Hastings*, 2022 U.S. Dist. LEXIS 158491, at \*13 (counterclaim allegations of "the waste of the call agent's time when speaking with Mr. Hastings . . . [and] the resources required to defend against Mr. Hastings's TCPA lawsuit" are insufficient to state damages for fraud, because the defendant "did not explain how the agents are compensated or how they perform their work, leaving this Court to guess how the call caused any damage (let alone damage that is not *de minimis*).").

And to remedy this non-existent breach of the non-existent contract, Defendant seeks to recover damages in the amount of "cost of attorneys' fees and court costs incurred in the defense of this lawsuit." ECF No. 14 at ¶ 50. But this is not supported by either law or "contract," because Defendant fails to allege any specific contract provision that entitles it to attorneys' fees—a Georgia law requirement. *See infra* Argument § II.

In summary, Defendant does not allege that it was harmed by any contractual breach, and for the damages it seeks, it pleads no entitlement to those damages.

---

[8] In fact, Defendant implies—through its motion to dismiss—that the delivery of the subject text messages was an automated, "computer-generated" process. *See* ECF No. 13 at 13.

## II.    Defendant fails to allege any entitlement to the relief it seeks.

Defendant seeks (1) "damages, costs, and reasonable attorneys' fees" caused by Plaintiff's alleged fraud and breach of contract; (2) that Plaintiff receive nothing; and (3) that the Court dismiss Plaintiff's claims because of the counterclaims. *See* ECF No. 14 at 10. However, Defendant fails to support its claim for attorneys' fees, and is not entitled to dismissal of Plaintiff's claims (or preclusion of Plaintiff's recovery to damages) by virtue of the counterclaims.[9]

Whether a party should be awarded attorneys' fees is determined by state law, and "Georgia courts follow the American rule which provides that each party is responsible for paying its own attorneys' fees, unless specific authority granted by statute or contract allows the assessment of those fees against the other party." *McCabe v. Daimler AG*, No. 1:12-CV-2494-MHC, 2015 U.S. Dist. LEXIS 182877,

---

[9]    Defendant's request that Plaintiff "take nothing" and that her claims be dismissed with prejudice because of the counterclaims appears to be a misguided attempt to apply an "unclean hands" argument to Plaintiff's TCPA claims. However, even if true, such claims should be *affirmative defenses*, but are nevertheless inapplicable to TCPA cases. *See, e.g.*, *Bruce v. Ocwen Loan Servicing, LLC*, No. 8:12-cv-1561-T-24 MAP, 2012 U.S. Dist. LEXIS 147897, 2012 WL 4867224, at *2 (M.D. Fla. Oct. 15, 2012) (striking affirmative defense of unclean hands as irrelevant to TCPA claims); *Career Counseling, Inc. v. AmeriFactors Fin. Grp., LLC*, Civil Action No. 3:16-cv-03013-JMC, 2022 U.S. Dist. LEXIS 16818, at *27 (D.S.C. Jan. 31, 2022) ("TCPA law in its current state does not support application of the equitable defenses of waiver and unclean hands to a claim of statutory damages under the TCPA.").

at *17 (N.D. Ga. Aug. 19, 2015) (Cohen, J.); *see also Sentinel Ins. Co. v. Tropical Smoothie Café, LLC*, No. 1:16-CV-4162-ODE, 2017 U.S. Dist. LEXIS 220910, at *13 (N.D. Ga. June 16, 2017) ("Under Georgia law, attorneys' fees and expenses are generally not allowed as damages.") (Evans, J.). To be sure, Georgia Code § 13-6-11 states: "The expenses of litigation generally shall not be allowed as a part of the damages; but where the plaintiff has specially pleaded and has made prayer therefor and where the defendant has acted in bad faith, has been stubbornly litigious, or has caused the plaintiff unnecessary trouble and expense, the jury may allow them."

Defendant's claim for attorneys' fees as a result of Plaintiff's alleged fraud fails both because it did not incur any attorneys' fees in responding to the initial complaint, *see supra* n.5, and Defendant fails to allege that Plaintiff acted in requisite bad faith, that she was "stubbornly litigious," or that she has "caused unnecessary trouble and expense," to receive any entitlement to attorneys' fees, nor did Defendant specially plead for attorney's fees under Georgia Code § 13-6-11.

Defendant also seeks attorneys' fees for the alleged breach of contract, but it does not articulate a viable claim for entitlement to attorneys' fees based on the contract. *See Pulte Home Corp. v. Woodland Nursery & Landscapes*, 230 Ga. App. 455, 458 (1998) ("A recovery of . . . attorney's fees in a contract action must be based upon evidence which shows more than a mere breach of contract."). Defendant

24

cites no contract language which would allow it to collect attorneys' fees as a result of its breach of contract allegations; rather, if anything, a claim for fees is disclaimed by the "Terms of Service" associated with the "contract." *See* Ex. C.

In sum, Defendant is not entitled to any of the relief it seeks through its frivolous counterclaims.

### Conclusion

In an attempt to defend itself against Plaintiff's TCPA allegations, Defendant brought counterclaims against Plaintiff that have no basis in law or fact. Defendant alleges a breach of contract without alleging a contract, a breach, or any recoverable damages, and Defendant alleges a claim for fraud while simultaneously disclaiming reliance and, again, failing to identify any recoverable damages. Because Defendant has no credible basis for bringing these claims, and because its counterclaims are woefully deficient in numerous key respects, this Court should dismiss Defendant's counterclaims with prejudice. If Defendant is afforded leave to file amended counterclaims, it will likely continue to use these counterclaims as a vehicle to harass or intimidate Plaintiff, and an attempt to transparently manufacture challenges to her typicality or adequacy as a class representative. Plaintiff respectfully requests that this Court deny Defendant an opportunity to further do so.

Date: December 22, 2022                    */s/ Rachel Berlin Benjamin*
                                           Rachel Berlin Benjamin

Georgia Bar No. 707419
rachel@hallandlampros.com
Brian J. Sutherland
Georgia Bar No. 105408
brian@hallandlampros.com
300 Galleria Pkwy SE, Suite 300
Atlanta, GA 30339
Telephone: (404) 876-8100
Facsimile: (404) 876-3477

Alex D. Kruzyk (*pro hac vice*)
**PARDELL, KRUZYK & GIRIBALDO, PLLC**
501 Congress Avenue, Suite 150
Austin, Texas 78701
Tele: (561) 726-8444
akruzyk@pkglegal.com

*Counsel for Plaintiff and the proposed class*

## CERTIFICATE OF SERVICE

I hereby certify that on December 22, 2022, I filed the foregoing with the Clerk of Court using the Court's CM/ECF system, which will provide electronic notice to all counsel of record.

*/s/ Alex D. Kruzyk*
Alex D. Kruzyk

## CERTIFICATE OF COMPLIANCE

I hereby certify that the foregoing document has been prepared with Times New Roman 14 point font, in compliance with Local Rule 5.1(c).

*/s/ Rachel Berlin Benjamin*
Rachel Berlin Benjamin