## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | |
|---|---|
| June Hall, on behalf of herself and all others similarly situated, )<br><br>Plaintiff, )<br><br>v. )<br><br>Xanadu Marketing, Inc. d/b/a Houses Into Homes )<br><br>Defendants. ) | CASE NO. 1:22-cv-03795-MHC |

June Hall, on behalf of herself and
all others similarly situated,

      Plaintiff,

v.

Xanadu Marketing, Inc. d/b/a
Houses Into Homes

      Defendants.

)
)
)
)
)
)
)
)
)
)
)
)
)
)

**CASE NO. 1:22-cv-03795-MHC**

## DEFENDANT'S AMENDED MOTION TO DISMISS PLAINTIFF'S AMENDED CLASS ACTION COMPLAINT AND MEMORANDUM OF LAW IN SUPPORT THEREOF

Defendant Xanadu Marketing, Inc., hereby moves to dismiss Plaintiff's Amended Class Action Complaint, pursuant to Rule 12(h)(3) of the Federal Rules of Civil Procedure, or, in the alternative, pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure.[1] As explained in the Memorandum of Law below, under binding

---

[1] Plaintiff filed a Motion to Dismiss on December 1, 2022 (D.E. 13). Defendant then filed an Amended Motion to Dismiss on December 27, 2022 (D.E. 19), raising a challenge to the Court's subject matter jurisdiction in addition to the arguments raised in its original Motion to Dismiss. Fed. R. Civ. P. 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action."). Plaintiff filed a Motion to Expand Page Limits for its response brief (D.E. 21),

Eleventh Circuit precedent, Plaintiff cannot establish any injury in fact that confers Article III standing based on the few short text messages she *requested* and that took mere seconds for her to read and respond to. Alternatively, Plaintiff's sole remaining claim—that Xanadu violated the seller-identification rules of the TCPA's implementing regulations—should be dismissed for failure to state a claim, because no private right of action exists to enforce the seller-identification regulations in 47 C.F.R. § 64.1200(d)(4). Thus, Plaintiff's claims must be dismissed.

## I.    INTRODUCTION

Plaintiff filed a Class Action Complaint (D.E. 1) alleging TCPA violations against Xanadu after requesting and consenting to receive text messages by submitting several information request forms on Xanadu's website seeking information relating to real estate investments. Minutes after she submitted these information request forms, Plaintiff alleges she received (from a short code identifiably associated with Houses Into Homes, Inc.) text messages that were less than sixteen words long and took just

---

contending, in part, that Defendant's Amended Motion to Dismiss exceeded the page limit in Local Rule 7.1(D). While Defendant disagrees, as its brief was within the 25-page limit and its motion merely repeated the brief's introduction, Defendant files this renewed Amended Motion to abide by the Court's Order striking its Amended Motion. (D.E. 23.)

seconds to read.[2] Almost immediately after receiving the texts she requested, Plaintiff opted out of receiving them and was placed on an internal Do Not Call list.

Despite providing express written consent to receive the text messages to both Xanadu and Houses Into Homes and then immediately opting out after receiving the requested communications, Plaintiff brought class-action claims alleging that Xanadu: (1) texted her number—which was on the national Do Not Call ("DNC") Registry—without consent; (2) did not maintain an internal DNC list of those who opted out of receiving text messages; and (3) violated 47 C.F.R. § 64.1200(d)(4), a procedural and technical regulation that requires sellers to provide identifying disclosures when sending text messages, but which includes no private cause of action. When confronted with clear evidence that she consented to receive the text messages (which were sent by Houses Into Homes, not Xanadu), Plaintiff attempted to salvage her lawsuit by amending her Complaint to assert only the technical seller-identification violation.

Plaintiff's Amended Class Action Complaint (D.E. 4) ("FAC"), however, must be dismissed for lack of subject matter jurisdiction under binding Eleventh Circuit precedent because she suffered no injury in fact, much less one traceable to the alleged

---

[2] Plaintiff wrongly named Xanadu Marketing, Inc. "d/b/a Houses Into Homes" as the Defendant in this Action. But Xanadu did not send the text messages at issue; Houses Into Homes, Inc. did. And Houses into Homes is a separate Florida corporation that is a corporate affiliate, not a d/b/a, of Xanadu. Xanadu nonetheless files this Motion to Dismiss, since it is the named Defendant and Plaintiff's claims are meritless.

technical violations. While Plaintiff asserts that she suffered an "invasion of privacy, an intrusion into her life, and a private nuisance," these harms bear no connection to the regulations' requirement that a seller identify itself. Rather, these are harms that can only be suffered when a seller fails to obtain consent, claims that Plaintiff (for good reason) expressly abandoned when she filed her FAC. And notably, the Eleventh Circuit has held that the harms identified by Plaintiff do not convey standing even where the recipient *did not* consent to the messages. In this case Plaintiff therefore lacks Article III standing for two independent reasons: (a) she has not suffered any cognizable harm from texts she opted into; and (b) even if she had, that harm could not possibly be traced to the violation alleged. The latter point is particularly true given that Xanadu (the named defendant) did not even send the messages. Plaintiff's single claim must thus be dismissed under binding Eleventh Circuit authority.

Alternatively, Plaintiff's FAC fails to state a claim upon which relief may be granted because no private right of action exists under 47 C.F.R. § 64.1200(d)(4), the regulation on which Plaintiff bases her claim. The plain language of the regulation confirms it was promulgated pursuant to 47 U.S.C. § 227(d), which intentionally excludes a private right of action. And fundamental principles of statutory interpretation also compel the conclusion that no private cause of action exists for the regulatory violation alleged. Indeed, the alternative would impose company-ending, uncapped

4

statutory damages on businesses who respond to consumers' written requests for communications because of a hyper-technical deficiency in the contact information provided to the consumer or for not making literally *impossible* disclosures. For example, a company could be put out of business for not including the name of the non-existent "individual caller" on computer-generated text messages, which are themselves permitted by the statute—a patently absurd result. Accordingly, Plaintiff fails to allege a cognizable cause of action under the TCPA. Thus, the Court should dismiss Plaintiff's FAC for lack of subject matter jurisdiction or, in the alternative, failure to state a claim.

## II.    FACTUAL BACKGROUND

Plaintiff filed a Class Action Complaint against Xanadu Marketing, Inc. d/b/a Houses Into Homes after receiving four short text messages. (FAC ¶¶ 12-13.) In her first Complaint, Plaintiff originally alleged three causes of action for: (1) texting consumers, like her, who registered their respective cellular or residential telephone number on the DNC Registry, in violation of 47 C.F.R. § 64.1200(c); (2) failing to maintain a record of consumers who requested not to receive telemarketing calls or texts, in violation of 47 C.F.R. § 64.1200(d)(6); and (3) failing to comply with the seller-identification provisions of 47 C.F.R. § 64.1200(d)(4). (*See generally* D.E. 1.)

Plaintiff, however, provided express, written consent to receive each of the four text messages she received when she submitted a lead form (which included her name

and telephone number) on a website belonging to Xanadu requesting information relating to real estate investments. (*See* D.E. 24 ("Am. Counterclaims") ¶¶ 10-11; Exh. A, Delfgauw Decl. ¶¶ 9, 12-14.) In fact, while Plaintiff submitted the first request to Xanadu's website in her own name, she submitted the subsequent requests in a different individual's name (in an apparent effort to hide her tracks). (Delfgauw Decl. ¶¶ 12-14.) But these subsequent requests included the same number and email as the original lead that included Plaintiff's name. (Am. Counterclaims ¶¶ 15-18; Delfgauw Decl. ¶¶ 12-14.) In any event, Plaintiff provided express, written consent to send her the text messages at issue. (*See* Am. Counterclaims ¶¶ 28-30; Delfgauw Decl. ¶¶ 5-7, 12-14.)

The text messages, which were sent from a short code that was identifiably registered to a Xanadu affiliate, Houses Into Homes, Inc., and related to real estate loans, were each sixteen or less words long and took just seconds to read.[3] (FAC ¶¶ 12-13, 18 & n. 4; Delfgauw Decl. ¶ 9.) Plaintiff texted the word "STOP" within five

---

[3] Specifically, the text messages stated:
- "Looks like there is one more Step needed for your Personal Loan Approval! Complete here."
- "Here is another Option for your Loan Request."
- "Based on your Loan Application and our Search, this Lender should approve your Loan Request."
- "If you haven't been approved yet, here are 4 choices that specialize in people like you."

(Delfgauw Decl. ¶¶ 15-16, 18, 20.)

minutes of receiving the second text, which was triggered by Plaintiff's opt-in, and was immediately placed on Defendant's internal Do Not Call list. (FAC ¶¶ 12-13; Delfgauw Decl. ¶¶ 16-17, 22.) Houses Into Homes also sent her a text message confirming that she opted out, in which Houses Into Homes explicitly identified itself. (Delfgauw Decl. ¶ 17.) Nonetheless, because Plaintiff submitted two additional leads to Xanadu's website, she consented to and received two additional text messages tied to those two leads. (Delfgauw Decl. ¶¶ 18, 20.) Within one minute of receiving each of the final two texts, she again texted "STOP" and was placed back onto the Do Not Call list. (Delfgauw Decl. ¶¶ 10, 19, 21-22.)

When confronted with clear evidence of her consent to receive the text messages (and the fact that her claims were fraudulent), Plaintiff amended her Class Action Complaint and withdrew her first two claims, leaving only her claim that Xanadu did not comply with the technical and procedural seller-identification provisions of 47 C.F.R. § 64.1200(d)(4). (*See* FAC.) Specifically, the FAC alleges that "Houses Into Homes . . . fails to identify any legal entity responsible for the website, its mobile terms and conditions, or its privacy policy." (*Id.* ¶ 15.) Incredibly, she makes this false allegation even though the seller identification provisions of 47 C.F.R. § 64.1200(d)(4) do not require a seller to provide its terms and conditions or privacy policy.

Plaintiff also wrongly alleges that a claim under 47 C.F.R. § 64.1200(d)(4) may

be brought as a private right of action under 47 U.S.C. § 227(c)(5). (*Id.* ¶ 2.) Thus,

Plaintiff purports to bring her claims on behalf of the following putative class:

> All persons and entities throughout the United States (1) to whom Xanadu
> Marketing, Inc. delivered, or caused to be delivered, more than one text
> message within a 12-month period, promoting Xanadu Marketing, Inc.'s
> or its business partners' goods or services, (2) where the subject text
> messages did not state the name of the individual caller, the name of
> Xanadu Marketing, Inc., and a telephone number or address at which
> Xanadu Marketing, Inc. may be contacted, (3) within four years
> preceding the date of this complaint through the date of class certification.

(*Id.* ¶ 7.).

In other words, Plaintiff's only remaining claim in the FAC alleges a technical

violation of the TCPA's implementing regulations for sending text messages (at her

request) without properly identifying itself. Plaintiff does not allege what harm she

suffered from this violation, simply stating in boilerplate terms that she suffered the

exact same harm she alleged in her original Complaint, which alleged the messages

were sent without consent: "[She] suffered actual harm as a result of the text messages

at issue in that she suffered an invasion of privacy, an intrusion into her life, and a

private nuisance." (*Id.* ¶ 27.)

While Plaintiffs' only existing claim is just as factually meritless as the two other

claims that she dismissed under threat of sanctions since Houses into Homes was clearly

identified twice and its unique short code number was provided in each text, the Court

should not reach that factual issue. That is because, as explained below, the Court does not have subject matter jurisdiction over Plaintiff's claim, or, in the alternative, because no private cause of action exists for that claim. For these reasons, Xanadu now moves to dismiss Plaintiff's Amended Complaint.

## III.    ARGUMENT

### A.    The Court Cannot Assert Subject Matter Jurisdiction Over Plaintiff's Claims Because Plaintiff Does Not Have Standing.

#### 1.    Rule 12(h)(3) Standard of Review.

Subject matter jurisdiction cannot be waived. *Jackson v. Seaboard Coast Line R.R. Co.*, 678 F.2d 992, 1000 (11th Cir. 1982). Thus, Rule 12(h)(3) allows the parties or the court to challenge subject matter jurisdiction at any time. Fed. R. Civ. P. 12(h)(3). "Once a party challenges a court's subject matter jurisdiction under Rule 12(h)(3), the court should apply the standards developed under Rule 12(b)(1) to decide whether jurisdiction exists." *Pembroke Tel. Co. v. Wireless Commc'ns Co.*, No. CV 491-396, 1992 WL 138388, at *2 (S.D. Ga. June 3, 1992); *see also Diaz v. Amerijet Int'l, Inc.*, 872 F. Supp. 2d 1365, 1368 (S.D. Fla. 2012) (analyzing a Rule 12(h)(3) motion under the Rule 12(b)(1) standard).

Rule 12(b)(1) requires dismissal when the court "lack[s] subject matter jurisdiction." Fed. R. Civ. P. 12(b)(1). "[A] federal court is powerless to act beyond its

statutory grant of subject matter jurisdiction" and "must zealously insure that jurisdiction exists." *Smith v. GTE Corp.*, 236 F.3d 1292, 1299 (11th Cir. 2002).

A Rule 12(b)(1) motion may present either a facial or a factual attack on the complaint. *Lawrence v. Dunbar*, 919 F.2d 1525, 1528–29 (11th Cir. 1990). Facial attacks are based on the allegations of jurisdiction in the complaint, and the court takes the allegations in the complaint as true. *Id.* at 1529. Factual attacks, on the other hand, "challenge the existence of subject matter jurisdiction in fact." *Id.* In such an instance, "the trial court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case." *Id.* (quoting *Williamson v. Tucker*, 645 F.2d 404, 412–13 (5th Cir. 1981)). This means there is "no presumptive truthfulness [that] attaches to [the] plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims." *Id.* In the face of a factual challenge to subject matter jurisdiction, plaintiff bears the burden to prove that jurisdiction exists. *OSI, Inc. v. United States*, 285 F.3d 947, 951 (11th Cir. 2002).

As set forth below, Plaintiff's FAC fails to establish a cognizable injury in fact, much less one traceable to the violations alleged. And the FAC fails on both facial and factual grounds. It should therefore be dismissed for lack of subject matter jurisdiction.

### 2. Plaintiff Cannot Facially or Factually Establish Subject Matter Jurisdiction Because She Suffered No Injury in Fact.

Plaintiff lacks standing to assert her hyper-technical seller identification claims

given that she consented to the text messages at issue and then opted out of receiving them within seconds. Standing "limits the category of litigants empowered to maintain a lawsuit in federal court." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016). The "irreducible constitutional minimum" of standing consists of three elements: (1) injury in fact, (2) that is fairly traceable to defendant's alleged conduct, and (3) that is likely to be redressed by a favorable judicial decision. *Id.* at 339. As explained below, Plaintiff cannot establish any injury in fact or any harm traceable to Xanadu's conduct.

i. <u>*Plaintiff Suffered No Injury In Fact From Defendant's Alleged Failure to Adequately Identify Itself.*</u>

Plaintiff's FAC fails to facially establish that Plaintiff was harmed by an alleged TCPA violation, nor can Plaintiff establish any harm as a matter of fact. The Supreme Court recently reaffirmed that "bare procedural violation[s]" cannot establish injury in fact, even where the challenged conduct amounts to a technical statutory violation. *TransUnion, LLC v. Ramirez,* 141 S. Ct. 2190, 2205 (2021) ("we cannot treat an injury as 'concrete' for Article III purposes based only on Congress's say-so") (quoting *Trichell v. Midland Credit Mgmt., Inc.*, 964 F.3d 990, 999 n.2 (11th Cir. 2020)). In the TCPA context, the Eleventh Circuit has repeatedly held that the receipt of unwanted text messages alone does not establish Article III standing. *See, e.g.*, *Salcedo v. Hanna*, 936 F.3d 1162 (11th Cir. 2019) (no standing for TCPA claim relating to unconsented text message); *Grigorian v. FCA US LLC*, 838 F. App'x 390, 394 (11th Cir. 2020)

(ringless voice mails, like text messages, do not amount to injury in fact because they do not result in material loss of time, render the device unavailable, cause the recipient to incur charges, or require the recipient's immediate attention); *see also Jenkins v. Simply Healthcare Plans, Inc.*, 479 F. Supp. 3d 1282, 1285 (S.D. Fla. 2020) (no harm where defendant received an unsolicited text message); *Eldridge v. Pet Supermarket Inc.*, 446 F. Supp. 3d 1063, 1070 (S.D. Fla. 2020) (no standing for TCPA for five text messages sent without consent).

Plaintiff's only claim alleges a bare procedural violation of the TCPA regulations that require a seller to identify itself (because she withdrew her claims that she received text messages without consent, as noted above). (*See generally* FAC.) But Plaintiff could not possibly have suffered any harm from this alleged (but untrue) hyper-technical violation. Houses Into Homes sent the text messages to Plaintiff from a short code that was identifiably registered under its name. (*See* FAC ¶ 18 n. 4; Delfgauw Decl. ¶ 9.) The text messages sent to Plaintiff enabled her to ***immediately*** respond "STOP" to the short code that sent the messages, which then automatically transmitted her message to the sender and opted her out of receiving additional messages. (Delfgauw Decl. ¶¶ 10, 22.)

And, as evident in Defendant's records, Plaintiff indeed texted "STOP" within seconds of receiving the texts she asked for and was then immediately placed on the Do

Not Call list. (*Id.* ¶¶ 16-22.)[4] In fact, she responded "STOP" in the *same minute* she received at least two of the text messages. (FAC ¶¶ 12-13; Delfgauw Decl. ¶¶ 18-21.) She therefore could not have spent more than a few seconds reading the short messages, far less than the time the Eleventh Circuit has found necessary to constitute a concrete injury. *Salcedo,* 936 F.3d at 1173 ("[P]recedents strongly suggest that concrete harm from wasted time requires, at the very least, more than a few seconds."); *Fenwick v. Orthopedic Specialty Inst.*, PLLC, No. 0:19-CV-62290, 2020 WL 913321, at *4 (S.D. Fla. Feb. 4, 2020) (noting that the single telemarking message at issue in *Salcedo* were divided into three parts and required plaintiff to read a number of unique words, but were nonetheless insufficient for standing). Accordingly, Plaintiff could not possibly have been harmed by any alleged hyper-technical deficiency in Defendant's identification procedures (even assuming, incorrectly, that there was any deficiency). *See Fenwick*, 2020 WL 913321, at *5 (no injury in fact where text recipient received two messages and immediately opted out by responding "stop" three minutes after receiving them).

As a result, it is not surprising that Plaintiff's Amended Complaint wholly fails to *allege* any harm under binding Eleventh Circuit precedent. Plaintiff's allegations

---

[4] Plaintiff only received additional text messages after responding "STOP" because she submitted more information request forms consenting once again to be texted (in an apparent attempt to manufacture claims). (Delfgauw Decl. ¶¶ 18, 20.)

regarding her injuries are limited to a single barebones sentence: that she "suffered actual harm as a result of the text messages at issue in that she suffered an invasion of privacy, an intrusion into her life, and a private nuisance." (FAC ¶ 27.) Plaintiff's allegations are facially insufficient because the Eleventh Circuit in *Salcedo* held that "intangible and ephemeral" alleged harms such as these "qualitatively do not constitute a concrete injury." *Salcedo*, 936 F.3d at 1167. Based on this binding precedent, district courts in the Eleventh Circuit have concluded that even more detailed allegations than Plaintiff's fail to establish subject matter jurisdiction. *See Eldridge,* 446 F. Supp. 3d at 1069 (allegation that text messages "invaded [his] privacy, intruded upon his seclusion and solitude, wasted his time by requiring him to open and read the messages, depleted his cellular telephone battery, and caused him to incur a usage allocation deduction to his text messaging or data plan" failed to establish injury in fact); *see also Jenkins*, 479 F. Supp. 3d at 1285 (no standing under *Salcedo* where complaint "devoid of any allegations showing concrete harm") (emphasis omitted).

The Eleventh Circuit's reasoning applies with even more force here, given the foregoing cases involved messages sent with *no initial consent*, whereas here Defendant had consent to text Plaintiff's number. Accordingly, Plaintiff's FAC fails to allege (and Plaintiff cannot possibly allege) any injury in fact that would confer standing to assert

her claims.

> ii.    *Plaintiff's Alleged Injury Is Not Traceable to Any Claimed Violation of the Seller-Identification Requirements of the TCPA.*

Plaintiff also fails to allege (and could not establish) standing for another independent and even more important reason: the injuries she claims to have suffered were not traceable to Defendant's alleged misconduct. Plaintiff "must allege some threatened or actual injury resulting from the putatively illegal action before a federal court may assume jurisdiction." *Cordoba v. DIRECTV, LLC*, 942 F.3d 1259, 1271 (11th Cir. 2019) (quoting *Simon v. Eastern Kentucky Welfare Rights Organization*, 426 U.S. 26, 96 (1976)). In other words, the injury must be traceable to the misconduct of the defendant. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992).

The Eleventh Circuit has long held that plaintiffs lack standing to sue for conduct they themselves invite, as any injury is traceable to their own conduct, not defendant's. *See Swann v. Sec'y*, 668 F.3d 1285, 1288 (11th Cir. 2012) ("[A]n injury is not fairly traceable to the actions of a defendant if caused by the 'independent action of some third party not before the court' and likewise a controversy is not justiciable when a plaintiff independently caused his own injury."). Moreover, to establish traceability under the TCPA, the plaintiff must show that her injury was caused by the defendant's failure to comply with the regulation in question. *Cordoba,* 942 F.3d at 1271-72 (citing *Lujan*, 504 U.S. at 560).

For example, in *Cordoba*, the Eleventh Circuit found that class members who did not ask defendant to stop calling could not establish that the defendant's failure to maintain an internal do not call list was fairly traceable to their injuries. *Id.* at 1272. The Court reasoned that those members "wouldn't have been on the list in the first place even if it had been maintained." *Id.*; *see also Cordoba v. DIRECTV, LLC*, No. 1:15-CV-3755-MHC, 2020 WL 5548767, at *3 (N.D. Ga. July 23, 2020) (Cohen, J.) ("[I]njuries of call recipients who do not ask a telemarketer to stop calling are not fairly traceable to the telemarketer's failure to maintain an internal do-not-call list.").

Similarly, with respect to Plaintiff's only remaining claim—that Defendant failed to properly identify itself in violation of § 64.1200(d)(4)—Defendant's alleged failure to identify itself was in no way connected to any invasion of privacy, the only injury she claims to have suffered. (*See* FAC ¶ 27.) Plaintiff's privacy-based harms bear no connection to the TCPA's seller-identification provisions (which do not implicate any privacy considerations). This is clear because a recipient's privacy is only invaded by the transmission of an unwanted call or text itself, not the technical violation of failing to identify the sender (especially in a text message sent **with consent**). *See St. Louis Heart Ctr., Inc. v. Nomax, Inc.,* 899 F.3d 500, 504 (8th Cir. 2018) (alleged privacy harms not traceable to defendant's failure to provide a technically compliant opt-out notice).

In fact, by the time Defendant texted Plaintiff and allegedly failed to identify itself, any injury to Plaintiff's privacy (of which there was none) had already come to pass when she received the consented-to message. Thus, by the same logic as the Eleventh Circuit applied in *Cordoba*, there was "no causal connection between the injury and the conduct complained of." *See Cordoba,* 942 F.3d at 1271 (quoting *Lujan*, 504 U.S. at 560); *accord Nomax, Inc.,* 899 F.3d at 504.[5] This lack of causal connection is particularly stark here because Xanadu did not even send the text messages that caused the alleged injury. It merely gave the information to Houses Into Homes, a separate entity that sent the alleged text messages to Plaintiff. (Delfgauw Decl. ¶ 9.)

Accordingly, Plaintiff fails to facially establish any concrete harm traceable to any TCPA technical violation under binding Eleventh Circuit precedent (nor could she establish such traceable harm as a matter of fact). Her FAC therefore must be dismissed for this reason alone, as the Court lacks subject matter jurisdiction.

---

[5] This is especially true since Plaintiff consented to receive the text message by submitting her phone number on Xanadu's website requesting information about real estate investments. (*See* Am. Counterclaims ¶¶ 10-11; Delfgauw Decl. ¶¶ 12-14.) Thus, any invasion to her privacy was therefore traceable to her own conduct, not Xanadu's. *Swann*, 668 F.3d at 1288 (no injury where plaintiff "independently cause [her] own injury"); *accord Nomax,* 899 F.3d at 504 (affirming no traceability because plaintiff "invited and did not rebuke" defendant's communications); *Garland v. Orlans, PC*, 999 F.3d 432, 441 (6th Cir. 2021) ("Self-inflicted injuries fail under [the traceability] prong because they are, by definition, not traceable to anyone but the plaintiff." (cleaned up)).

**B.**  **Plaintiff's Claims Must Also Be Dismissed For Failure To State a Claim.**

Even assuming that the Court has subject matter jurisdiction (which it does not), Plaintiff fails to state a claim upon which relief may be granted because no private right of action exists for alleged violations of the seller-identification provisions in 47 C.F.R. § 64.1200(d)(4).

**1.**  **Rule 12(b)(6) Motion to Dismiss Standard.**

Federal Rule of Civil Procedure 8(a)(2) requires that a pleading contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). While this pleading standard does not require "detailed factual allegations," the Supreme Court has held that "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

Under Federal Rule of Civil Procedure 12(b)(6), a claim will be dismissed for failure to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. A claim will survive a motion to dismiss only if the factual allegations in the pleading are "enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

At the motion to dismiss stage, the court accepts all well-pleaded facts in the plaintiff's complaint as true, as well as all reasonable inferences drawn from those facts. *McGinley v. Houston*, 361 F.3d 1328, 1330 (11th Cir. 2004); *Lotierzo v. Woman's World Med. Ctr., Inc*., 278 F.3d 1180, 1182 (11th Cir. 2002). But the Court need not accept legal conclusions, nor must it accept as true legal conclusions couched as factual allegations. *Iqbal*, 556 U.S. at 678. Thus, evaluation of a motion to dismiss requires the court to assume the veracity of well-pleaded factual allegations and "determine whether they plausibly give rise to an entitlement to relief." *Id.* at 679. As set forth below, as a matter of law, Plaintiff's allegations do not give rise to an entitlement to relief.

      **2.**    **Plaintiff Fails to State a Claim Because No Private Right of Action Exists Under the Seller Identification Provisions of 47 C.F.R. § 64.1200(d)(4).**

Plaintiff fails to state a claim under the TCPA and its implementing regulations, because the seller identification provisions of 47 C.F.R. § 64.1200(d)(4) do not give rise to a private right of action.

          i.      *47 C.F.R. § 64.1200(d)(4) Was Promulgated Under 47 U.S.C. § 227(d), Which Includes No Private Right of Action.*

While Plaintiff alleges violations of procedural seller-identification provisions of 47 C.F.R. § 64.1200(d)(4) pursuant to 47 U.S.C. § 227(c)(5), no such cause of action exists. Section 64.1200(d)(4) implements 47 U.S.C. § 227(d), not 47 U.S.C. § 227(c), and only the latter contains a private cause of action.

Section 227(d) addresses "Technical and Procedural" TCPA standards, including the requirement that all prerecorded calls identify the entity initiating the call and state its telephone number. *See* 47 U.S.C. § 227(d)(3)(A) ("[A]ll artificial or prerecorded telephone messages (i) shall, at the beginning of the message, state clearly the identity of the business, individual, or other entity initiating the call, and (ii) shall, during or after the message, state clearly the telephone number or address of such business, other entity, or individual"). Section 227(d)(3) empowers the Federal Communication Commission ("FCC") to "prescribe technical and procedural standards" to implement its seller-identification requirements. 47 U.S.C. § 227(d)(3). Accordingly, the FCC seller-identification regulations, set forth in 47 C.F.R. § 64.1200(d)(4), similarly require an entity making telemarking calls to provide (1) "the name of the individual caller," (2) "the name of the . . . entity on whose behalf the call is being made," and (3) "a telephone number or address at which the . . . entity may be contacted." 47 C.F.R. § 64.1200(d)(4).

Subsection 64.1200(d)(4) was clearly promulgated to implement the seller-identification requirements of Section 227(d), as the regulation's language almost directly tracks the language of Section 227(d). *Compare* 47 U.S.C. § 227(d)(3)(A) *with* 47 C.F.R. § 64.1200(d)(4). Section 227(c), on the other hand (which Plaintiff cites as the source for her private right of action), requires employees to implement "do not

call" procedures that have nothing to do with the "technical and procedural" seller-identification requirements of Section 227(d). Thus, a plain reading of the statutory and regulatory language confirms that the seller-identification regulations in 47 C.F.R. § 64.1200(d)(4) that form the basis of Plaintiff's claims were promulgated pursuant to Section 227(d).

The Federal Communications Commission ("FCC") itself confirmed this when it passed 64.1200(d)(4). The FCC explicitly included the provisions of Section 64.1200(d)(4) within Section III.D of its 1992 Report and Order Implementing the TCPA, which relate to "Technical and Procedural Violations" and cites *47 U.S.C. § 227(d)* as the source of its authority to pass the seller-identification regulations. *See In the Matter of Rules & Reguls. Implementing the Tel. Consumer Prot. Act of 1991*, 7 F.C.C. Rcd. 8752 (1992) ("The TCPA mandates that all artificial or prerecorded telephone messages delivered by an autodialer state clearly the identity of the caller at the beginning of the message and the caller's telephone number or address during or after the message, § 227(d)(3)(A), and we adopt this requirement in our rules, 64.1200(d)."); *see also Burdge v. Ass'n Health Care Mgmt., Inc*., No. 1:10-CV-00100, 2011 WL 379159, at *4 (S.D. Ohio Feb. 2, 2011) (citing the 1992 Report and holding that no private right of action exists for violating the seller-identification provisions of Section 64.1200(d)(4)).

Importantly, unlike Section 227(c), Section 227(d) does not include a private right of action because "[a]llowing separate recovery for each and every technical violation alleged would create a windfall for plaintiffs clearly not in the contemplation of Congress." *See Ashland Hosp. Corp. v. Serv. Employees Int'l Union, Dist. 1199 WV/KY/OH*, 708 F.3d 737, 745 (6th Cir. 2013) (noting Section 227(d) does not contain a private right of action); *Boydston v. Asset Acceptance LLC*, 496 F.Supp.2d 1101, 1110 (N.D. Cal. 2007); *Kopf v. Battaglia*, 425 F.Supp.2d 76, 91 (D.D.C. 2006); *Klein v. Vision Lab Telecomms., Inc.*, 399 F.Supp.2d 528, 539 (S.D.N.Y. 2005). Thus, in contrast with the <u>do not call</u> policies and training requirements contained in 47 C.F.R. § 64.1200(d)(1)-(3) (which implement the <u>do not call</u> provisions in 47 U.S.C. § 227(c)),[6] the seller-identification procedures in 47 C.F.R. § 64.1200(d)(4) do not include a private right of action so as not to create a windfall for plaintiffs for hyper-technical violations of the implementing regulations.[7] *See Boydston*, 496 F.Supp.2d at

---

[6] Section 227(c)(5) creates a private right of action to a "person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed ***under this subsection***." 47 U.S.C. § 227(c)(5) (emphasis added).

[7] While some courts have held that the "internal do not call" regulations in 47 C.F.R. § 64.1200<u>(d)(1)-(3)</u> include a private right of action under 27 U.S.C. § 227(c), these holdings do not apply to the seller-identification provisions of 47 C.F.R. § 64.1200<u>(d)(4)</u>. *See Persichetti v. T-Mobile USA, Inc.,* 479 F.Supp.3d 1333, 1338 (N.D. Ga. Aug. 17, 2020). The "internal do not call" provisions of Subsections (d)(1) through (d)(3) track the language of and concern the same subject matter as Section 227(c), but the seller identification provisions of Subsection (d)(4) track the language of and

1110; *Cunningham v. Rapid Response Monitoring Servs., Inc*., 251 F. Supp. 3d 1187,

1200 (M.D. Tenn. 2017) (explaining that 47 C.F.R. § 64.1200(d)(4) could be attributed

to 47 U.S.C. § 227(d) with no private right of action, even if 47 C.F.R. § 64.1200(d)(1)-

(2) is attributed to 47 U.S.C. § 227(c) and have a private right of action because different

portions of a single subsection of a regulation could be attributed to more than one

subsection of the statute they implement).

Thus, Congress did not create a private right of action for the seller identification

procedures in 47 C.F.R. § 64.1200(d)(4). Plaintiff therefore cannot invoke § 227(c)(5)

as the basis for her cause of action for alleged violations of Section 64.1200(d)(4). *See*

*Burdge v. Ass'n Health Care Mgmt., Inc.,* No. 1:08-CV-00509, 2009 WL 414595, at

*3 (S.D. Ohio Feb. 18, 2009) (noting that regulations in 47 C.F.R. § 64.1200 "morph

together" provisions Sections 227(b), (c), and (d), and concluding "that there is no

---

concern the same subject matter of Section 227(d). Indeed, Section 227(c) includes
nothing regarding seller identification, only do-not-call procedures. *Persichetti*
specifically highlights this distinction, and its holding only pertained to claims under
the "internal do not call" regulations of Subsections (d)(1) through (d)(3). *See*
*Persichetti,* 479 F.Supp.3d at 1338 (citing *Burdge*, 2011 WL 379159 at *3 for the
proposition that "§ 64.1200(d)(4), which requires telemarketers to identify themselves,
cannot be enforced through a private right of action"). And, there is no reason why the
different subsections of 47 C.F.R. § 64.1200 cannot be attributed to different
subsections of Section 227. *See Cunningham*, 251 F. Supp. 3d at 1200. Thus, the seller-
identification regulations in Subsection (d)(4) are distinct from the other provisions in
Subsection (d) and include no private right of action.

private right of action for failure on the part of an automated telemarketing call to identify itself or provide its phone number."). Accordingly, Plaintiff fails to state a cognizable claim under the TCPA, and her FAC must be dismissed.

> ii.     *A Private Right of Action Under 47 C.F.R. § 64.1200(d)(4) Would Subject Defendant to Potentially Crippling Class Action Damages for Texts That Plaintiff Requested.*

While the plain language of 47 U.S.C. § 227(d) and 47 C.F.R. § 64.1200(d)(4), taken together, demonstrate that no private right of action exists for violations of the seller-identification regulations, basic rules of statutory interpretation also compel the same result. It is axiomatic that a statute or regulation should not be interpreted in a manner that would render an absurd result. *See Iberiabank v. Beneva 41-I, LLC,* 701 F.3d 916, 924 (11th Cir. 2012) (holding that a court should not apply even the plain language of a statute if it would lead to an absurd result).

Imposing a private right of action pursuant to 47 C.F.R. § 64.1200(d)(4) would expose defendants who make calls in good faith to consumers ***who requested the calls*** to company-ending liability under the TCPA's regime of uncapped statutory damages of up to $1,500 per message. Under Plaintiff's theory, anyone can affirmatively say, "please send me text messages about your services" and then bring a class action for enormous, bankrupting sums for these permissible, consented-to text messages— simply because the requested communications did not come with the letter-perfect

disclosures (buried in the Code of Federal Regulations that most small businesses do not even know exist). Compounding this problem is the fact that some of these disclosures are *literally impossible* to provide, such as including the "name of the individual caller" in a computer-generated text message (that no individual person sent) with the information the consumer requested. *See* 47 C.F.R. § 64.1200(d)(4). And yet, these automated text messages are completely permissible when a consumer (like Plaintiff) consented to receive them. *Palm Beach Golf Ctr.-Boca, Inc. v. Sarris*, 212 F. Supp. 3d 1286, 1298 (S.D. Fla. 2016) (refusing to interpret the TCPA's implementing regulation in a manner that "leads to absurd results which cannot possibly follow from a permissible construction of the TCPA or from an agency's reasonable interpretation of its regulations").

Thus, fundamental principles of statutory interpretation also compel the conclusion that 47 C.F.R. § 64.1200(d)(4) was promulgated under 47 U.S.C. § 227(d) and carries no private right of action. Accordingly, Plaintiff's FAC must be dismissed for failure to state a claim.

## IV.  CONCLUSION

In light of the foregoing, the Court should dismiss Plaintiff's FAC, with prejudice, for lack of subject matter jurisdiction under Rule 12(h)(3), or, in the alternative, for failure to state a claim under Rule 12(b)(6).

Respectfully submitted this 5th day of January, 2023.

**KABAT CHAPMAN & OZMER LLP**

*/s/ Ryan D. Watstein*
Ryan D. Watstein
Georgia Bar Number 266019
rwatstein@kcozlaw.com
Joshua Y. Joel
Georgia Bar No. 230547
jjoel@kcozlaw.com
171 17th Street NW, Suite 1550
Atlanta, Georgia 30363
(404) 400-7300
(404) 400-7333 Fax

*Counsel for Defendant*

## **CERTIFICATE OF COMPLIANCE**

Undersigned counsel certifies the foregoing document has been prepared with one of the font and point selections (Times New Roman, 14 point) approved by the Court in Local Rule 5.1.

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that today, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system, which will send a notice of electronic filing to all counsel of record.

/s/ Ryan D. Watstein
Counsel for Defendant