## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF GEORGIA

June Hall, on behalf of herself and all
others similarly situated,

        Plaintiff,

    v.

Xanadu Marketing, Inc. d/b/a Houses
Into Homes,

        Defendant.

Case No. 1:22-cv-03795-MHC

## **PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT'S AMENDED MOTION TO DISMISS AMENDED COMPLAINT AND MEMORANDUM OF LAW**

# Table of Contents

Introduction .................................................................................................1

Factual Background .....................................................................................2

Procedural Standard ....................................................................................4

Argument.....................................................................................................5

I.  The Court should deny Defendant's motion to dismiss under Rule 12(b)(1)....5

A.  Defendant's motion to dismiss under Rule 12(b)(1) is premised on false representations to the Court. ........................................................6

B.  Applying *Salcedo* and its progeny to Plaintiff's *actual* allegations demonstrates that Plaintiff sufficiently alleges that she suffered a concrete harm that satisfies Article III standing requirements...................................7

C.  Plaintiff's alleged injuries are traceable directly to Defendant's violations of the TCPA...................................................................................10

II. Plaintiff states a valid claim that Defendant failed to make required disclosures, thereby hiding its identity and violating the TCPA, in the telemarketing messages it delivered to Plaintiff and the proposed class. ...............................13

A.  The TCPA contains a private right of action to enforce the requirement that telemarketers provide appropriate identifying disclosures. ........................13

1.  The FCC promulgated 47 C.F.R. § 64.1200(d), including § 64.1200(d)(4), as part of 47 U.S.C. § 227(c)'s general mandate to adopt adequate do-not-call regulations.................................................................................14

2.  Defendant's cited authority is either inapposite, or largely irrelevant.....19

3.  Defendant argues for artificial distinctions within claims under § 64.1200(d) that numerous other courts do not acknowledge. ..................21

4.  Defendant did not even *attempt* to comply with its disclosure requirements, nor was such information readily discoverable by Plaintiff....................22

B.  Defendant cannot introduce external allegations to bolster its Rule 12(b)(6) argument...................................................................................................23

1.  Defendant cannot cite to its ill-conceived counterclaims or a party declaration to bolster its motion to dismiss...............................................23

2.  Defendant's suggestion that damages associated with 47 C.F.R. § 64.1200(d)(4) are so "crippling" as to be "absurd" relies on irrelevant consent hypotheticals, and is nevertheless plainly wrong.......................24

Conclusion ..............................................................................................................25

## Introduction

Xanadu Marketing, Inc. d/b/a Houses Into Homes's ("Defendant") amended motion to dismiss—its third filing under Rule 12(b)(6)—seeks to dismiss June Hall's ("Plaintiff") claims under both Rule 12(b)(6) and Rule 12(b)(1). In doing so, Defendant compounds its errors from its prior motions by misrepresenting Plaintiff's allegations and instead relying on Defendant's own self-serving allegations that are well outside the four corners of the complaint.[1] Defendant then asserts a series of arguments concerning Plaintiff's standing that omit several of Plaintiff's core allegations, and subsequently bases its entire argument on its wrong recitation of the Complaint. Defendant's efforts fail on the merits and should not be countenanced.

Regarding Defendant's Rule 12(b)(1) motion, Defendant misleadingly omits several of Plaintiff's harm and standing-related allegations, arbitrarily selects one allegation in isolation, and proceeds to spend its entire motion targeting that lone, granular allegation. But Plaintiff's Complaint contains several allegations regarding her harm and standing that Defendant simply did not address—and thereby waived at this juncture—so its motion accordingly falls apart under closer scrutiny.

As to Defendant's Rule 12(b)(6) motion, Defendant suggests that violations

---

[1]    On October 6, 2022, Plaintiff filed an Amended Complaint, which is the operative complaint in this matter (the "Complaint."). ECF No. 4.

of 47 C.F.R. § 64.1200(d)(4) cannot be enforced through a private right of action, and alludes that it nevertheless complied in good faith with the disclosure requirements of 47 C.F.R. § 64.1200(d)(4). In doing so, Defendant suggests that Plaintiff's claims lack merit because strict compliance with the regulation is not reasonable as the regulation is arcane and too "hyper-technical." However, in positing these arguments, Defendant again relies largely on misrepresenting the allegations in this case and misinterpreting relevant case law. In actuality, and as detailed *infra*, every argument brought by Defendant is contradicted by an abundance of case law in this Circuit and nationwide.

In light of the above, both prongs of Defendant's motion to dismiss fail and this Court should deny Defendant's motion with prejudice.

### Factual Background

Plaintiff is, and has been at all times relevant to this action, the regular and sole user of her cellular telephone number, which she uses as her personal residential telephone number. ECF No. 4 at ¶¶ 8-9.[2] Beginning on or about February 10, 2022, Plaintiff received a series of telemarketing text messages from short code 94657 advertising to Plaintiff that she was either about to be approved for a personal loan,

---

[2]    Unless otherwise indicated, all internal citations are omitted and all emphasis is added.

or advertising the commercial availability of other lenders for personal loans. *Id.* at ¶ 12. However, Plaintiff did not recognize the sender, did not request any loans, and did not complete any pending loan application as referenced in those text messages. *Id.* at ¶ 13. Moreover, Plaintiff did not recognize the varied website URLs referenced by those text messages, which include: http://another-step.xyz; http://loan-foru.xyz; http://fastcash-4u.xyz; and http://loans-for-u.site. *Id.* at ¶¶ 12-13.

These messages confused Plaintiff, as she had not completed any loan applications or sought any personal loans with Defendant, nor from any of the websites referenced by the text messages delivered by 94657. *Id.* at ¶¶ 13, 64. As a result, on multiple occasions, Plaintiff responded to short code 94657 with the message "STOP." *Id.* at ¶ 12. Following investigation into the identity of the sender of these messages from short code 94657, Plaintiff identified an unrelated website, houses-into-homes.com, which claimed ownership of the 94657 short code. *Id.* at ¶ 18. However, that website failed to identify any legal entity responsible for the communications at issue, and instead directed users to Defendant's corporate headquarters address. *Id.* at ¶¶ 18-20.

Because of Plaintiff's confusion as to the identity of the sender of the telemarketing text messages at issue—which was further compounded by their references to false loan applications for which Plaintiff did not complete and of

3

which Plaintiff had no knowledge—she alleges that Defendant violated 47 C.F.R. §

64.1200(d)(4), which is one of the Telephone Consumer Protection Act's ("TCPA")

implementing regulations requiring telemarketers to provide identifying disclosures.

*Id.* at ¶¶ 56-65. As explained *infra*, violations of § 64.1200(d)(4) are enforceable

through the private right of action enumerated in 47 U.S.C. § 227(c)(5).

### Procedural Standard

Federal Rule of Civil Procedure 8(a)(2) requires that a pleading contain a

"short and plain statement of the claim showing that the pleader is entitled to relief."

Fed. R. Civ. P. 8(a)(2). In evaluating a Rule 12(b)(1) motion to dismiss, "[a]

defendant may challenge a district court's subject matter jurisdiction through two

(2) different types of attacks: facial attacks and factual attacks." *Stalley ex rel. U.S.*

*v. Orlando Reg'l Healthcare Sys., Inc.*, 524 F.3d 1229, 1232 (11th Cir. 2008). "[A]

factual attack on a complaint challenges the existence of subject matter jurisdiction

using material extrinsic from the pleadings, such as affidavits or testimony."

*McDade v. U.S. Dep't of Educ.*, No. 1:20-CV-03509-ELR, 2022 U.S. Dist. LEXIS

79694, at *6 (N.D. Ga. Feb. 16, 2022). Defendant advances a factual attack here. In

light of that, the Court is "free to weigh the evidence and satisfy itself as to the

existence of its power to hear the case." *Id.*

When evaluating a Rule 12(b)(6) motion to dismiss, a court must determine

whether the complaint contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A complaint need not provide "detailed factual allegations," but it must provide factual allegations sufficient to set forth the plaintiff's entitlement to relief. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). At this stage, the court accepts all well-pleaded facts in the plaintiff's complaint as true, as well as all reasonable inferences drawn from those facts. *See McGinley v. Houston*, 361 F.3d 1328, 1330 (11th Cir. 2004).

### Argument

### I. The Court should deny Defendant's motion to dismiss under Rule 12(b)(1).

Article III standing "limits the category of litigants empowered to maintain a lawsuit in federal court." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016). The "irreducible constitutional minimum" of standing consists of three elements: (1) an injury in fact, (2) that is fairly traceable to the defendant's alleged conduct, and (3) that is likely to be redressed by a favorable judicial decision. *Id.* at 339.

As detailed below, Plaintiff alleges (1) that she was injured by Defendant's delivery of the text message solicitations at issue—hours of wasted time investigating the identity of the sender responsible for the text messages at issue, and confusion regarding their representations that she was being told that a false loan

application was approved—(2) that the injury she sustained was directly caused by Defendant's failure to make required identifying disclosures as mandated by the TCPA and Federal Communications Commission ("FCC"); and (3) that her harm can be adequately redressed by a favorable judicial decision.

**A. Defendant's motion to dismiss under Rule 12(b)(1) is premised on false representations to the Court.**

It appears as though Defendant's motion to dismiss under Rule 12(b)(1) is premised almost entirely on a misreading of Plaintiff's Complaint. Specifically, Defendant contends: "*Plaintiff's allegations regarding her injuries are limited to a single barebones sentence*: that she 'suffered actual harm as a result of the text messages at issue in that she suffered an invasion of privacy, an intrusion into her life, and a private nuisance.'" ECF No. 25 at 13-14 . This is false.

Specifically, Plaintiff advances the following *additional* allegations regarding her concrete injury directly stemming from Defendant's violations of the TCPA: "Plaintiff was harmed by Defendant's omission of this required information because she spent several hours attempting to identify the entity responsible for sending the text messages at issue as well as additional time investigating ways to get Defendant to stop delivering the text messages," ECF No. 4 at ¶ 63, and that "Plaintiff was additionally confused by Defendant's references to pending loan applications with entities she could not identify." *Id.* at ¶ 64. These allegations are in addition to the

"invasion of privacy, an intrusion into her life, and a private nuisance" allegation identified by Defendant. *Id.* at ¶ 27. Defendant's entire argument is premised on its position that ¶ 27 *in isolation* is insufficient to adequately allege that Plaintiff suffered a concrete harm that satisfies the requirements of Article III standing. This argument is baseless and ultimately irrelevant because Plaintiff alleges additional, specific harm that directly traces to Defendant's violations of the TCPA, and that plainly satisfies Eleventh Circuit precedent regarding standing in TCPA cases.

**B.    Applying *Salcedo* and its progeny to Plaintiff's *actual* allegations demonstrates that Plaintiff sufficiently alleges that she suffered a concrete harm that satisfies Article III standing requirements.**

Defendant's remaining arguments regarding a lack of standing rapidly collapse when scrutinized against Plaintiff's *actual* allegations. Unfortunately, because Defendant ignores most of Plaintiff's allegations that are relevant to her standing and allegations of harm, it is difficult to respond to each of Defendant's arguments directly, given that they are largely premised on its erroneous interpretation of Plaintiff's Complaint. When the Complaint is analyzed in its entirety, however, it is clear that *Salcedo* and its progeny compel a denial of Defendant's motion.

In *Salcedo v. Hanna*, the defendant argued that the transmission of a single, brief text message promoting discounted legal services caused no concrete injury

because the recipient spent only a few seconds reviewing and deleting the text. 936 F.3d 1162 (11th Cir. 2019). The Eleventh Circuit agreed, and in reaching that conclusion, it noted that the plaintiff "did not allege any tangible injuries (such as a specific amount of time lost addressing the text message or that receiving the text made his phone unavailable to him) and his alleged intangible injuries did not suffice to establish a concrete injury based on history and the judgment of Congress." *Underwood v. IFA Holdings, LLC*, No. 1:21-cv-00830-ACA, 2022 U.S. Dist. LEXIS 112938, at *7 (N.D. Ala. June 27, 2022) (discussing *Salcedo*).

Since the Eleventh Circuit issued its ruling in *Salcedo*, District courts within this Circuit applying *Salcedo* consistently find that plaintiffs satisfy standing in situations analogous to Plaintiff's. For example, in *Underwood*, the Northern District of Alabama concluded that the allegation that "over the course of two days, [the plaintiff] received two text messages on the cell phone that he uses as his main residential line and that he spent time 'answering the text messages and tracing their origin'" to be "distinguishable from those in *Salcedo*." *Id.* at *7. Because of these allegations, the court found that the plaintiff adequately alleged standing and denied the defendant's motion to dismiss. *See generally id.*

In another analogous situation, Judge Boulee recently found a plaintiff satisfied standing requirements by alleging that he received multiple text messages

that caused him to waste a substantial amount of time:

> As an initial matter, this Court finds that Plaintiff alleged a tangible harm in his Complaint that is sufficient to support standing. Specifically, he alleged that he was harmed because the text messages "occupied the capacity of Plaintiff's cellular telephone and depleted the battery of Plaintiff's cellular telephone." At the motion to dismiss stage, this Court must accept Plaintiff's allegations as true.
> . . .
> Importantly, Plaintiff argued more than just the number of texts received. Unlike *Salcedo*, Plaintiff's Complaint was not silent on the question of "wasted time," nor was it general. In this case, Plaintiff specifically detailed the actions he took in responding to the text messages and his attempts to stop future text messages. For instance, he changed the settings on his phone in an attempt to stop the messages. He also called customer service and e-mailed Defendant's CEO in response to the messages. Because Plaintiff detailed the specific actions he took after he received the text messages, this Court finds that these allegations are sufficient to show a concrete harm based on wasted time.

*Persichetti v. T-Mobile United States*, 479 F. Supp. 3d 1333, 1337 (N.D. Ga. 2020).

Unlike the plaintiff in *Salcedo*, but akin to the plaintiffs in *Persichetti* and *Underwood*, Plaintiff specifically alleges that "she spent several hours attempting to identify the entity responsible for sending the text messages at issue as well as additional time investigating ways to get Defendant to stop delivering the text messages." ECF No. 4 at ¶ 63. This rises above mere annoyance at receiving a single text message—like in *Salcedo*—and articulates the "wasted time" with sufficient specificity to survive a motion to dismiss. *See* 936 F.3d at 1173 ("allegations of wasted time can state a concrete harm for standing purposes" but that "concrete harm

from wasted time requires, at the very least, more than a few seconds.").[3]

In sum, Defendant completely ignores that Plaintiff alleges injury by way of (1) wasting several hours investigating the identity of the entity responsible for sending the text messages at issue; and (2) confusion regarding Defendant's false representations that she was approved for a loan she never applied for, despite those allegations being critical to her Complaint. This Court should not join Defendant's error, and should instead find that Plaintiff sufficiently alleges a concrete harm.

## C. Plaintiff's alleged injuries are traceable directly to Defendant's violations of the TCPA.

Plaintiff also alleges that this wasted time and confusion traces directly to Defendant's failure to provide its required identifying disclosures. These allegations satisfy the "traceability" requirement of constitutional standing, which requires that there "be a causal connection between the injury and the conduct complained of." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992). For the same reasons as discussed *supra*, because Defendant fails to acknowledge most of Plaintiff's harm allegations, its arguments regarding a lack of traceability are similarly

---

[3]     Of course, for the reasons discussed *supra* Argument § I.A, Defendant simply does not address Plaintiff's allegations regarding her injuries, and because it failed to do so in its opening motion, it is not entitled to do so on reply. *See Iou Cent., Inc. v. Shore Appliance Connection Inc.*, No. 1:20-cv-2367-MLB, 2021 U.S. Dist. LEXIS 50674, at *12 (N.D. Ga. Mar. 18, 2021) (Cohen, J.).

underdeveloped and difficult to adequately respond to. *See* ECF No. 25 at 16 (falsely arguing that "Defendant's alleged failure to identify itself was in no way connected to any invasion of privacy, *the only injury she claims to have suffered*.").

However, to the extent that Defendant argues that Plaintiff "invited" the communications—with which Plaintiff disagrees—that would nevertheless not undermine her standing. The Supreme Court has "made clear that an injury resulting from" an unlawful action "remains fairly traceable to [the action], even if the injury could be described in some sense as willingly incurred." *FEC v. Ted Cruz for Senate*, 142 S. Ct. 1638, 1647 (2022). Courts in this Circuit concur:

> Attempting to avoid this straightforward application of *Salcedo* and *Cordoba*, VantagePoint argues that, because Weister "invited" communication from Vantage-Point by texting "DEMO" to 411411, Weister suffered no injury-in-fact by receiving the fifteen voicemails. Although the analysis of standing often overlaps with the analysis of the merits, in this instance the analyses remain distinct. In an action under the TCPA, consent functions as an affirmative defense to liability and not "as an issue of constitutional standing." Regardless, Weister's one-time text of "DEMO" in response to the radio spot naturally invited a one-time registration text from VantagePoint—not fifteen voicemails "inviting" Weister to attend a training webinar. Under prevailing precedent, Weister demonstrates standing to sue under the TCPA.

*Weister v. Vantage Point AI, LLC*, No. 8:21-cv-1250-SDM-AEP, 2022 U.S. Dist. LEXIS 139642, at *11-12 (M.D. Fla. Aug. 3, 2022); *see also Underwood*, 2022 U.S. Dist. LEXIS 112938, at *9 ("Mr. Underwood's decision to click on the link in the texts or to spend time tracking down who sent the messages does not sever the

traceability link.").

Even if the Court credited Defendant's unproven allegations that Plaintiff somehow invited the harm caused by Defendant's non-disclosures by submitting a consent form on an unrelated third-party website, it still does not sever the traceability of Plaintiff's harm to Defendant's violations of the TCPA. This is because, even if Defendant's counterclaim allegations were true, Plaintiff was (1) contacted by an entity that did not disclose its identity in its communications (that was unrelated to the third-party website); (2) told in each of the communications that Plaintiff was either approved, or about to be approved, for a loan she never applied for, *see* ECF No. 4 at ¶ 12; and (3) provided with the following URL hyperlinks— http://another-step.xyz, http://loan-foru.xyz, http://fastcash-4u.xyz, and http://loans-for-u.site—which Defendant does not contend are related to it or the third-party website, and which did not disclose Defendant's identity nor the identity of the alleged sender of the messages. Meanwhile, the alleged sender of the messages is an illegally unregistered Florida business headquartered in Michigan.[4] Defendant ignores this, and instead focuses solely on the argument that Plaintiff's privacy was

---

[4]     Houses-into-homes.com discloses Defendant's headquarters in Michigan as the relevant address for user inquiries. *See* Ex. A. However, there is no "Houses Into Homes, Inc." entity registered to do business in Michigan. *See* ECF No. 4 at ¶ 18; Exs. B, C. Albeit not a component of Plaintiff's claims, this failure to register as a business entity appears to violate Michigan law. *See* M.C.L. § 450.2055.

not invaded by Defendant's non-disclosure. *See generally* ECF No. 25 at 16-17.

Plaintiff alleges a concrete injury, traced directly to Defendant's violation of the TCPA, and therefore this Court has subject matter jurisdiction over her claims.

## II. Plaintiff states a valid claim that Defendant failed to make required disclosures, thereby hiding its identity and violating the TCPA, in the telemarketing messages it delivered to Plaintiff and the proposed class.

Pursuant to 47 C.F.R. § 64.1200(d)(4), "[a] person or entity making a call for telemarketing purposes must provide the called party with the name of the individual caller, the name of the person or entity on whose behalf the call is being made, and a telephone number or address at which the person or entity may be contacted." Plaintiff adequately alleges that Defendant failed to provide Plaintiff with *any* of the information required by § 64.1200(d)(4). ECF No. 4 at ¶¶ 12, 61.

### A. The TCPA contains a private right of action to enforce the requirement that telemarketers provide appropriate identifying disclosures.

Plaintiff alleges that Defendant's violations of 47 C.F.R. § 64.1200(d)(4) are enforceable through 47 U.S.C. § 227(c)(5), which provides a private right of action for "[a] person who has received more than one telephone call within any 12-month period by or on behalf of the same entity regulations prescribed under this subsection." Defendant instead contends that the FCC promulgated § 64.1200(d)'s regulations under 47 U.S.C. § 227(d), which lacks a private right of action.

However—and as more fully explained below—nearly all courts that have addressed this issue, including those within this Circuit, *flatly reject* Defendant's minority position. In fact, no court within this Circuit endorses Defendant's position that § 64.1200(d) lacks a private right of action under 47 U.S.C. § 227(c)(5).

1. **The FCC promulgated 47 C.F.R. § 64.1200(d), including § 64.1200(d)(4), as part of 47 U.S.C. § 227(c)'s general mandate to adopt adequate do-not-call regulations.**

As an initial matter, § 64.1200(d)'s regulations are a set of "procedures for maintaining a list of persons who request not to receive telemarketing calls made by or on behalf of that person or entity," and includes, among those "minimum standards," the sender identification requirements at issue here. Violations of those "minimum standards" for telemarketing messages are enforceable under 47 U.S.C. § 227(c)(5)—the private right of action associated with violations of the TCPA's implementing regulations associated with the "[p]rotection of [telephone] subscriber privacy rights" and protection of "telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object." 47 U.S.C. § 227(c)(1).

Despite this, Defendant suggests that § 64.1200(d)'s regulations are grouped with 47 U.S.C. § 227(d), which sets "[t]echincal and procedural standards" for the use of fax machines and "[a]rtificial or prerecorded voice systems"—neither of which are at issue in this case. In support of its argument, Defendant states that the

FCC "explicitly included the provisions of Section 64.1200(d)(4) within Section III.D of its 1992 Report and Order Implementing the TCPA, which relate to 'Technical and Procedural Violations' and cites *47 U.S.C. § 227(d)* as the source of its authority to pass the seller-identification regulations." ECF No. 25 at 21 (emphasis in original). However, Defendant cites to a 1992 report by the FCC that references 1992 regulations. Those regulations were subsequently changed and rearranged in 2003, and thus are inapplicable to the present regulatory scheme.

More specifically, in 2003 the FCC implemented the "national database" system known today as the National Do-Not-Call Registry. *In re Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 18 FCC Rcd. 14014 ("*2003 Order*"). At that time, the FCC codified the new Do-Not-Call requirements in 47 C.F.R. § 64.1200(c) and in doing so, also contemporaneously moved the telephone solicitation regulations from § 64.1200(e) to § 64.1200(d). *Compare* 47 C.F.R. § 64.1200(e) (2002) *with* 47 C.F.R. § 64.1200(d) (2003).[5] As a result, the FCC's two sets of regulations for restricting "telephone solicitations" under 47 U.S.C. § 227(c) are logically located next to each other in §§ 64.1200(c) and

---

[5]     In doing so, the "technical and procedural" disclosures previously contemplated by § 64.1200(d)—which tied to § 227(d)—were moved to § 64.1200(b). *Compare* 47 C.F.R. § 64.1200(d) (2002) *with* 47 C.F.R. § 64.1200(b) (2003).

64.1200(d). *See 2003 Order* at 14088 n. 417.

This conclusion is supported by abundant caselaw. For example, in *Persichetti*, Judge Boulee addressed this very argument, denying a motion to dismiss where "Defendant argue[d] that . . . violations of 47 C.F.R. § 64.1200(d) cannot be enforced via a private right of action." 479 F. Supp. 3d at 1336. There, Judge Boulee found "that the substance of the regulation more directly corresponds to the substance of § 227(c) rather than § 227(d). § 227(c) requires the Federal Communication Commission . . . 'to initiate rulemaking proceedings to evaluate, among other issues, the potential use of 'industry-based or company specific 'do not call' systems.'" *Id.* The court added: "§ 227(d), on the other hand, 'directs the FCC to revise regulations setting technical and procedural standards for telephone facsimile machines and artificial or prerecorded voice systems and does not address internal, company specific do-not-call procedures.'" *Id.*

In rejecting the same arguments Defendant advances here, Judge Boulee noted that "[o]ther jurisdictions have directly addressed whether § 64.1200(d) supports a private right of action. 'A majority of courts that have addressed the issue (though not all) . . . have held that § 64.1200(d) was promulgated under the authority in § 277(c) [sic] and, therefore, contains a private right of action.'" *Id.* at 1338 (collecting cases). Judge Boulee subsequently held:

> For several reasons, this Court agrees with the majority and thus rejects Defendant's argument that the regulation cannot be enforced through a private right of action. . . . § 64.1200(d) and § 227(c) are similar in that they are both concerned principally with the protection of individual privacy rights. More specifically, the primary purpose of § 227(c) is to ensure that subscribers "avoid receiving telephone solicitations to which they object." The do-not-call provisions outlined in § 64.1200(d) furthers that purpose and comports with the statute. Because this Court finds that § 64.1200(d) was promulgated pursuant to § 227(c), which permits a private right of action, Defendant's Amended Motion to Dismiss is DENIED as to this ground.

*Id.* at 1338-39.

Additionally, the Eleventh Circuit, in *Cordoba v. DIRECTV, LLC*, acknowledged that violations of FCC telemarketing regulations are enforceable through a private right of action under § 227(c)(5)—albeit in a different context. 942 F.3d 1259, 1265 (11th Cir. 2019) ("The TCPA creates a private right of action for anyone who receives more than one call within a year from the same entity in violation of [64.1200(d)]").

Outside this Circuit, the significant majority of courts nationwide concur, including in the specific context of claims under § 64.1200(d)(4). *See, e.g.*, *Robison v. 7PN, LLC*, 569 F. Supp. 3d 1175, 1184 (D. Utah 2021) ("Section 64.1200(d)(4) violations are actionable through Section 227(c)'s private right of action.").[6]

---

[6]     *See also Worsham v. Disc. Power, Inc.*, Civil Action No. RDB-20-0008, 2021 U.S. Dist. LEXIS 230937, at *8 (D. Md. Dec. 1, 2021) (granting motion for reconsideration and reversing prior holding that "47 C.F.R. § 64.1200(d)(4) does not

The court in *Rosenberg v. LoanDepot.com LLC* concurred:

A majority of courts that have addressed the issue (though not all), including the Sixth Circuit, have held that 47 C.F.R. §64.1200(d)(4) was promulgated under the authority in § 227(c) and, therefore, contains a private right of action. . . . The Court agrees with the majority. Overall, §64.1200(d), like § 227(c), is concerned principally with the protection of individual privacy rights. The principal purpose of § 227(c) is to ensure that subscribers "avoid receiving telephone solicitations to which they object." *The do-not-call provisions, including §64.1200(d)(4), further that goal and comport with the statute.* The available record indicates that §64.1200(d) was promulgated under § 227(c) and contains a private right of action. Defendants' motion to dismiss on that ground will, therefore, be denied.

435 F. Supp. 3d 308, 324-25 (D. Mass. 2020).

This conclusion is broadly echoed by courts in the general context of claims under § 64.1200(d). *See, e.g.*, *Charvat v. NMP, Ltd. Liab. Co.*, 656 F.3d 440, 449 (6th Cir. 2011) (finding that violations of § 64.1200(d) contain a private right of action enforceable through 47 U.S.C. § 227(c)(5)).[7] As such, this Court should not

---

provide a private right of action," collecting cases, and concluding that "the regulatory history of 47 C.F.R. § 64.1200(d) and its place in the statutory scheme suggests that the regulation at issue is best construed as a privacy protection that was originally promulgated pursuant to § 227(c)."); *accord Drew v. Lexington Consumer Advocacy, LLC*, No. 16-cv-00200-LB, 2016 U.S. Dist. LEXIS 52385, at *18 (N.D. Cal. Apr. 18, 2016) (noting that "47 C.F.R §64.1200(c) and (d) are regulations promulgated under [47 U.S.C.] §227(c)," and finding that violations of § 64.1200(d)(4) contain a private right of action under § 227(c)(5)).

[7]    *See also Bilek v. Nat'l Cong.*, 470 F. Supp. 3d 857, 863 (N.D. Ill. 2020) (same); *Simmons v. Charter Communs., Inc.*, 222 F. Supp. 3d 121, 130-31 (D. Conn. 2016) (same); *Wagner v. CLC Resorts & Devs., Inc.*, 32 F. Supp. 3d 1193, 1198

depart from these well-reasoned conclusions.

**2.    Defendant's cited authority is either inapposite, or largely irrelevant.**

In response to the overwhelming weight of authority supporting the conclusion that Plaintiff's claims have a private right of action under the TCPA, Defendant cites to a small collection of cases that are either irrelevant to the issue before this Court, or readily distinguishable.

Defendant relies primarily on *Burdge v. Ass'n Health Care Mgmt.*, 2011 U.S. Dist. LEXIS 9879 (S.D. Ohio Feb. 2, 2011). However, in *Burdge*, the plaintiff erroneously argued that "[t]he TCPA Regulations currently set forth at 47 C.F.R. §64.1200(d) were promulgated under 47 U.S.C. §227(b)," rather than under § 227(c)(5), and so the court unsurprisingly rejected the plaintiff's incorrect position. *Compare id.* at *9 *with* Ex. D. However, nowhere in *Burdge* did the court address whether those claims were actionable under § 227(c)(5), as is the present case. In fact, the *Burdge* plaintiff expressly disclaimed it, stating in their opposition to the

---

(M.D. Fla. 2014) (same); *Worsham v. LifeStation, Inc.*, No. 661, 2021 Md. App. LEXIS 1014, at *44-45 (App. Nov. 17, 2021) (same); *Adam v. CHW Grp., Inc.*, No. 21-CV-19-LRR, 2021 U.S. Dist. LEXIS 170620, at *21 (N.D. Iowa Sep. 9, 2021) (same); *Barrett v. Vivint, Inc.*, No. 2:19-cv-00568-DBB-CMR, 2020 U.S. Dist. LEXIS 89055, at *14 (D. Utah May 20, 2020) (same); *Smith v. Truman Rd. Dev., LLC*, No. 4:18-cv-00670-NKL, 2020 U.S. Dist. LEXIS 74330, at *48 (W.D. Mo. Apr. 28, 2020) (same).

motion to dismiss that "[i]n the case at bar, **Plaintiffs do not assert any claims under 47 U.S.C. §227(c)**." *Id.* at 24 (emphasis in original). This dramatically undercuts *Burdge*'s relevance. *See Sorsby v. TrueGreen Ltd. P'ship*, No. 20-cv-2601, 2020 U.S. Dist. LEXIS 241659, at *17 (N.D. Ill. Dec. 23, 2020) (distinguishing and rejecting *Burdge* on this basis).

Aside from *Burdge*, Defendant's caselaw boils down to two remaining arguments. First, it suggests that *Cunningham v. Rapid Response Monitoring Servs., Inc.* supports its desired outcome, but that stretches *Cunningham*'s dicta far beyond its holding. 251 F. Supp. 3d 1187 (M.D. Tenn. 2017). In reality, *Cunningham* noted, in passing, that "[t]aken in isolation, it is plausible that 47 C.F.R. § 64.1200(d)(4)—which concerns required disclosures during telemarketing calls—could have been promulgated under 47 U.S.C. § 227(d)." *Id.* at 1200. However, it continued:

> While many portions of 47 C.F.R. § 64.1200 could arguably be attributed to more than one subsection of the TCPA, the Court ultimately agrees with the Sixth Circuit that the internal do-not-call procedures of 47 C.F.R. § 64.1200(d) fit cleanly under the rubric of 47 U.S.C. § 227(c)'s general mandate to adopt adequate do-not-call regulations. Accordingly, a violation of 47 C.F.R. § 64.1200(d) can give rise to a claim under 47 U.S.C. § 227(c)(5).

*Id.* at 1200-01. As a result, *Cunningham*, if anything, supports Plaintiff's position.

Lastly, Defendant cites to a handful of cases noting that claims brought under 47 U.S.C. § 227(d) lack a private right of action. *See generally* ECF No. 25 at 21.

But Plaintiff does not bring claims under 47 U.S.C. § 227(d), as explained *supra*

Argument § II.A.1. As a result, that handful of cases remains irrelevant to this case.

### 3. Defendant argues for artificial distinctions within claims under § 64.1200(d) that numerous other courts do not acknowledge.

In an attempt to distinguish the relevant in-Circuit authority holding that

violations of § 64.1200(d) are enforceable through a private right of action under 47

U.S.C. § 227(c)(5), Defendant erroneously suggests that courts, including courts

within this District, distinguish between claims brought under § 64.1200(d)(1)-(3)

and § 64.1200(d)(4). *See* ECF No. 25 at 22 n.7. In doing so, Defendant misstates the

holding in *Persichetti*. 479 F. Supp. 3d 1333. Specifically, Defendant states:

"*Persichetti* specifically highlights this distinction, and its holding only pertained to

claims under the "internal do not call" regulations of Subsections (d)(1) through

(d)(3)." ECF No. 25 at 22 n.7.

Defendant somehow draws this conclusion from the following discussion:

Other jurisdictions have directly addressed whether § 64.1200(d) supports a private right of action. "A majority of courts that have addressed the issue (though not all) . . . have held that § 64.1200(d) was promulgated under the authority in § 277(c) [sic] and, therefore, contains a private right of action." *Rosenberg v. LoanDepot.com LLC*, 435 F. Supp. 3d 308, 324 (D. Mass. 2020) . . . [collecting six cases] . . . *But see Burdge v. Ass'n Health Care Mgmt., Inc.*, No. 1:10-CV-00100, 2011 U.S. Dist. LEXIS 9879, 2011 WL 379159, at *3 (S.D. Ohio Feb. 2, 2011) (*finding that § 64.1200(d)(4), which requires telemarketers to identify themselves, cannot be enforced through a private right of action*).

> For several reasons, this Court agrees with the majority and thus rejects Defendant's argument that the regulation cannot be enforced through a private right of action.

*Persichetti*, 479 F. Supp. 3d at 1339.

A single "*but see*" citation of contrary authority (which is addressed *supra* Argument § II.A.2), followed by a rejection of that authority, is a far cry from "specifically highlight[ing]" that distinction and limiting a holding on that basis. Defendant's suggestion that *Persichetti*'s holding "only pertained to claims under the 'internal do not call' regulations of Subsections (d)(1) through (d)(3)" is a distinction that is not evident from any language in *Persichetti*'s holding.

### 4. Defendant did not even *attempt* to comply with its disclosure requirements, nor was such information readily discoverable by Plaintiff.

Throughout Defendant's motion, it implies that it acted in "good faith" compliance with the TCPA, while simultaneously suggesting that Plaintiff's claim is based on a "hyper-technical" reading of the TCPA's implementing regulations that seek to punish Defendant for failing to make "letter-perfect disclosures (buried in the Code of Federal Regulations that most small businesses do not even know exist)." ECF No. 25 at 24-25. Defendant's representations strain credulity when compared with the facts and allegations actually before this Court.

The TCPA's caller identification requirements impose straightforward

requirements on a company delivering telemarketing messages: it must identify the name of the person sending the message, the person or entity responsible for the message, and a telephone number or address at which that person or entity may be contacted. *See* 47 C.F.R. § 64.1200(d)(4). Plaintiff alleges that Defendant's messages do not attempt to meet *any* of those requirements.

As stated in the Complaint, nowhere in its communications does Defendant make even a cursory attempt to identify itself, identify the sender of the messages, or provide a phone number or address at which the responsible entity may be contacted. *See* 47 C.F.R. § 64.1200(d)(4). Thus, characterizing Plaintiff's allegations as a "hyper-technical" reading of the statutory requirements simply misrepresents the allegations in Plaintiff's Complaint, and this Court should not credit Defendant's self-serving representations.

**B.    Defendant cannot introduce external allegations to bolster its Rule 12(b)(6) argument.**

**1.    Defendant cannot cite to its ill-conceived counterclaims or a party declaration to bolster its motion to dismiss.**

Through its motion to dismiss, Defendant inserts self-serving factual allegations, which are plainly inappropriate for a motion to dismiss under Rule 12(b)(6). Specifically, Defendant filed counterclaims—which lack merit—and attached a party declaration to use those unsubstantiated allegations as a basis for its

motion to dismiss. *See, e.g.*, ECF No. 25 at 2-8 (arguing that Plaintiff provided Defendant with consent through a real estate investing website); *id.* at 24 (same). None of these argumentative allegations are appropriate for consideration in a motion to dismiss under Rule 12(b)(6). *See JTH Tax LLC v. Robertson*, No. 4:21-CV-00082-JPB, 2021 U.S. Dist. LEXIS 224535, at *7 (N.D. Ga. Nov. 22, 2021) (denying motion to dismiss counterclaim based on allegations in original complaint).

As a result, this Court should decline to consider Defendant's self-serving allegations and any arguments based on them here—including Defendant's unproven allegations that Plaintiff "requested the calls," in evaluating the Defendant's motion that is presently before the Court. *See* ECF No. 25 at 24.

### 2. Defendant's suggestion that damages associated with 47 C.F.R. § 64.1200(d)(4) are so "crippling" as to be "absurd" relies on irrelevant consent hypotheticals, and is nevertheless plainly wrong.

Lastly, Defendant argues that, if the Court were to ignore the allegations of this case and apply entirely unrelated hypothetical facts, the damages associated with Defendant's violations of 47 C.F.R. § 64.1200(d)(4) are "crippling," "company-ending," and therefore "absurd." Not so.

The damages contemplated by a repeat violation of § 64.1200(d) are enumerated in § 227(c)(5) of the TCPA, which provides for recovery of actual damages or up to $500 in statutory damages for each violation, with treble damages

available upon a showing that the defendant acted willfully or knowingly. This is materially identical to the damages contemplated by other violations of the TCPA. *See, e.g.*, 47 U.S.C. §§ 227(b)(3)(B)-(C). Thus, for Defendant's self-serving conclusion that awarding damages under § 227(c)(5) is "crippling," "company-ending," and therefore "absurd," this Court would need to conclude that the entire TCPA's statutory damages scheme is "absurd" and invalid. This would contradict decades of established caselaw in this Circuit and nationwide, and—to the extent an "excessive" damages award results in this matter—it is best addressed post-judgment, *rather than at a motion to dismiss under Rule 12(b)(6). See, e.g.*, *Physicians Healthsource, Inc. v. Doctor Diabetic Supply, LLC*, No. 12-22330-CIV-SEITZ, 2014 U.S. Dist. LEXIS 177222, at *25 (S.D. Fla. Dec. 23, 2014) ("the prospect of unconstitutionally excessive liability is not a reason to deny certification of an otherwise valid class—after certifying a class, courts can always reduce an award based on an evaluation of a defendant's overall course of conduct."); *accord Murray v. GMAC Mortg. Corp.*, 434 F.3d 948, 953 (7th Cir. 2006) ("An award that would be unconstitutionally excessive may be reduced, but constitutional limits are best applied after a class has been certified.").

## Conclusion

For the foregoing reasons, this Court should deny Defendant's motion.

Date: January 16, 2023        */s/ Rachel Berlin Benjamin*
Rachel Berlin Benjamin
Georgia Bar No. 707419
rachel@hallandlampros.com
Brian J. Sutherland
Georgia Bar No. 105408
brian@hallandlampros.com
300 Galleria Pkwy SE, Suite 300
Atlanta, GA 30339
Telephone: (404) 876-8100
Facsimile: (404) 876-3477

Alex D. Kruzyk (*pro hac vice*)
**PARDELL, KRUZYK & GIRIBALDO, PLLC**
501 Congress Avenue, Suite 150
Austin, Texas 78701
Tele: (561) 726-8444
akruzyk@pkglegal.com
*Counsel for Plaintiff and the proposed class*

## CERTIFICATE OF SERVICE

I hereby certify that on January 16, 2023, I filed the foregoing with the Clerk of Court using the Court's CM/ECF system, which will provide electronic notice to all counsel of record.

       */s/ Rachel Berlin Benjamin*
Rachel Berlin Benjamin

'

## CERTIFICATE OF COMPLIANCE

I hereby certify that the foregoing document has been prepared with Times

New Roman 14 point font, in compliance with Local Rule 5.1(c).

*/s/ Rachel Berlin Benjamin*
Rachel Berlin Benjamin