**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | |
|---|---|
| June Hall, on behalf of herself and all others similarly situated,<br><br>             Plaintiff,<br><br>    v.<br><br>Xanadu Marketing, Inc. d/b/a Houses Into Homes,<br><br>             Defendant. | Case No. 1:22-cv-03795-MHC |

<u>**PLAINTIFF'S MOTION TO DISMISS DEFENDANT'S AMENDED**</u>
<u>**COUNTERCLAIMS AND MEMORANDUM OF LAW**</u>

# Table of Contents

Introduction ....................................................................................1

Procedural History ..........................................................................1

Factual Background .........................................................................2

Argument.........................................................................................4

   I.  Procedural Standard.................................................................4

   II.  Plaintiff's initial, non-operative complaint is a legal nullity............5

   III.  Defendant fails to state a claim for fraud. .........................................6

     A.  Defendant fails to allege justifiable reliance—and even disclaims any reliance on Plaintiff's representations. ..................................................7

     B.  Even if Defendant adequately alleges that Plaintiff engaged in "fraud," it does not adequately allege it was harmed by the fraud. ....................................11

   IV.  Defendant fails to state a claim for breach of contract...................................16

     A.  Defendant fails to allege the existence of an enforceable contract............16

     B.  Even if a contract existed, Defendant fails to allege a breach of the contract...................................................................................19

     C.  Even if a contract existed, and Plaintiff breached the contract, Defendant does not identify any harm or entitlement to damages proximately caused by the alleged breach. ............................................19

     D.  Defendant fails to state a claim for breach of implied duties.....................23

   V.  Count IV of Defendant's counterclaim fails to state a cause of action. .........25

Conclusion ....................................................................................25

## Introduction

Xanadu Marketing, Inc. d/b/a Houses Into Homes' ("Defendant") second attempt to inject counterclaims into this case—premised on its disagreement with June Hall's ("Plaintiff") allegations in a non-operative complaint it never responded to—is a rather transparent attempt to derail Plaintiff's class claims by advancing claims that plainly fail to meet minimum standards under this Circuit's caselaw. Defendant's deficiencies include that it: (1) suggests that it sent no communications to Plaintiff, then later claims to have been damaged by Plaintiff because another entity communicated with her; (2) fails to allege the elements necessary to assert a fraud claim; (3) fails to allege the existence of a contract, let alone a breach of a contract; and (4) fails to identify an actionable claim for its *de minimis* damages under either theory. Even if Defendant's allegations were entirely accepted as true, Defendant simply fails to allege a single cogent theory through which it could seek and recover damages, despite advancing frivolous and inconsistent allegations in an effort to do so. As such, this Court should grant Plaintiff's motion and dismiss Defendant's counterclaims with prejudice.

## Procedural History

On September 21, 2022, Plaintiff filed a class action lawsuit against Defendant alleging that it violated the Telephone Consumer Protection Act

("TCPA") by (1) delivering telemarketing messages without required identifying disclosures; (2) delivering telemarketing messages after the recipient instructed Defendant to stop; and (3) delivering telemarketing messages to residential telephone numbers registered to the National Do-Not-Call Registry, absent prior express written consent. *See generally* ECF No. 1. On September 27, 2022, Plaintiff served that complaint on Defendant. ECF No. 6.

Following initial correspondence between Plaintiff's counsel and Defendant's in-house counsel, Plaintiff filed an amended complaint narrowing Plaintiff's claims on October 6, 2022. *See* ECF No. 4. On December 1, 2022, Defendant filed its counterclaims against Plaintiff, along with a motion to dismiss Plaintiff's amended complaint. *See* ECF Nos. 13-14. Plaintiff moved to dismiss those counterclaims, *see* ECF No. 18, prompting Defendant to file the amended counterclaims now before the Court. ECF No. 24.

### Factual Background[1]

Defendant alleges that Plaintiff is a "serial TCPA complainant"—who has filed no TCPA cases in her life aside from this case—and alleges that she manufactured a TCPA claim against Defendant and filed a fraudulent claim

---

[1]    Plaintiff denies the veracity of Defendant's factual allegations, but because of the procedural posture of this motion, Defendant's allegations must be accepted as true, and Plaintiff will not contest them here.

approximately seven months after receiving a series of text messages from a then-unknown sender. ECF No. 24 at ¶¶ 7-8. In advancing these allegations, Defendant alleges that on February 2, 2022, just after 5 a.m., Plaintiff first submitted her name, her phone number, and an email address to the website renttoownhomefinder.com, and then, at the same time, additionally submitted two separate submissions which included a different name, her phone number, and the same email address. *Id.* at ¶¶ 9-11, 15-16. Defendant alleges that these simultaneous submissions came from different IP addresses geolocated in and around Atlanta, Georgia. *Id.* at ¶¶ 15-17. As a result, Defendant contends that Plaintiff "submitted these leads to solicit additional text messages and manufacture TCPA claims, while attempting to conceal her efforts by using a false name and email address." *Id.* at ¶ 27. In response to these submissions, Defendant contends that a third party delivered text messages to Plaintiff's telephone number about 20 minutes later, around 5:27 a.m. *Id.* at ¶¶ 23-25.

As part of these submissions, Defendant contends that Plaintiff entered into a binding contract with it *and at least 57 other entities* due to Plaintiff's submission of information to renttoownhomefinder.com. *Id.* at ¶¶ 12-14; *see also*

Ex. A (renttoownhomefinder.com's list of partners).[2] Defendant also contends that Plaintiff committed tortious fraud against it, breached an implied duty of good faith and fair dealing, and breached a contract with it because Plaintiff submitted her information to renttoownhomefinder.com using two different names. *See generally* ECF No. 24 at ¶¶ 36-56. Defendant alleges that it was harmed by its employees responding to Plaintiff's filing of a complaint and its related investigation, and that it is accordingly entitled to recover attorneys' fees to defend this case. *Id.* at ¶¶ 33, 43, 49, 55. Defendant additionally alleges that it is not responsible for the delivery of the text messages at issue to Plaintiff, *see* ECF No. 25 at 3 n.2, but also that it "expended resources" to share Plaintiff's submissions to renttoownhomefinder.com with a third party during the approximately twenty minutes between her alleged submission of consent at 5:08 a.m. and her receipt of the subject text messages beginning at 5:27 a.m. *See* ECF No. 24 at ¶¶ 9, 23, 46.

## Argument

### I. Procedural Standard.

In evaluating a Rule 12(b)(6) motion to dismiss, a court must determine whether the complaint contains "sufficient factual matter, accepted as true, to 'state

---

[2]    The Court may take judicial notice of website excerpts referenced by Defendant's counterclaims. *See, e.g.*, *Moore v. Trader Joe's Co.*, No. 4:18-cv-04418, 2019 U.S. Dist. LEXIS 105379, at *6 (N.D. Cal. June 24, 2019).

a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).[3] A complaint need not provide "detailed factual allegations," but it must provide allegations sufficient to set forth an entitlement to relief. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "Under *Twombly* and *Iqbal*, however, only plausible-and not merely possible-claims survive a Rule 12(b)(6) motion to dismiss." *Almanza v. United Airlines, Inc.*, 851 F.3d 1060, 1074 (11th Cir. 2017).

Under Rule 9(b), "the circumstances constituting fraud . . . shall be stated with particularity." Rule 9(b) is satisfied where the party alleges "(1) precisely what statements were made in what documents or oral representations or what omissions were made, and (2) the time and place of each such statement and the person responsible for making . . . same, and (3) the content of such statements and the manner in which they misled the plaintiff, and (4) what the defendants obtained as a consequence of the fraud." *United States ex rel. Clausen v. Lab. Corp. of Am.*, 290 F.3d 1301, 1310 (11th Cir. 2002).

## II.    Plaintiff's initial, non-operative complaint is a legal nullity.

Defendant's counterclaims are largely premised on an attack against Plaintiff's original complaint, which has no bearing on the claims before the Court. This undermines Rule 15(a)(1), which is intended to allow a "pleader to consider

---

[3]    Unless otherwise indicated, all internal citations are omitted and all emphasis is added.

carefully and promptly the wisdom of amending to meet the arguments" raised by the opposing party, as Plaintiff did here. Fed. R. Civ. P. 15 committee note (2009). And "Plaintiff's original Complaint is a nullity after the filing of the Amended Complaint." *Campbell v. Resurgent Capital Servs., L.P.*, No. 1:20-CV-3009, 2020 U.S. Dist. LEXIS 254262, at *4 (N.D. Ga. Nov. 9, 2020); *see also Pintado v. Miami-Dade Hous. Agency*, 501 F.3d 1241, 1243 (11th Cir. 2007) (an "amended pleading supersedes the former pleading; the original pleading is abandoned by the amendment, and is no longer a part of the pleader's averments against his adversary"). As a result, Defendant's counterclaims—seeking recovery of "the cost of attorneys' fees and court costs incurred in the defense of this lawsuit," ECF No. 24 at ¶¶ 43, 50, 56, 61—should not incorporate or relate to allegations in Plaintiff's nullified original complaint, particularly because Defendant did not retain its counsel until after Plaintiff filed the *amended* complaint. *See* ECF Nos. 4, 8.

## III.  Defendant fails to state a claim for fraud.

To state a viable claim for fraud under Georgia law, a plaintiff must allege "(1) a material misrepresentation by the defendant, (2) the defendant's knowledge that the information is false (scienter), (3) the defendant's intention to induce the plaintiff to act or to refrain from acting, (4) justifiable reliance by the plaintiff, and (5) damage to the plaintiff." *Scalzo v. Jankauskas*, No. 1:18-CV-4571, 2021 U.S.

Dist. LEXIS 179257, at *38 (N.D. Ga. May 4, 2021) (Cohen, J.). The damages must be "proximately caused by the representation." *Cummings v. Nationstar Mortg. LLC*, No. 1:16-cv-2000, 2017 U.S. Dist. LEXIS 29384, at *9 (N.D. Ga. Mar. 2, 2017). Defendant's fraud claim does not satisfy these elements.

### A.    Defendant fails to allege justifiable reliance—and even disclaims any reliance on Plaintiff's representations.

Fatal to Defendant's claim for fraud is that Defendant disclaims reliance on Plaintiff's representations. Specifically, Defendant states—both through its counterclaims and its motion to dismiss Plaintiff's amended complaint—that Plaintiff sued the wrong entity, and therefore, Defendant did not send the communications at issue. *See* ECF No. 24 at ¶ 20; ECF No. 25 at 3 n.2. This admission alone is fatal to Defendant's claim for reliance.

The Eastern District of Arkansas recently dismissed similar counterclaims in *Hastings v. SmartMatch Ins. Agency, LLC* where a defendant alleged that a TCPA plaintiff committed fraud by using a false name when providing consent to be contacted. No. 4:22-cv-00228, 2022 U.S. Dist. LEXIS 158491 (E.D. Ark. Sep. 1, 2022). There, like here, the defendant disavowed sending the messages at issue, while simultaneously alleging that it was harmed by relying on the alleged misrepresentations, resulting in the dismissal of those counterclaims:

[W]ith respect to the cost of defending against Mr. Hastings's TCPA

lawsuit, SmartMatch's problems run deeper. SmartMatch does not allege that it called Mr. Hastings or caused any other entity to call Mr. Hastings. Indeed, SmartMatch's allegations seem to suggest that Mr. Hastings was called by a third party that SmartMatch does not control. The take-home point here is that, according to SmartMatch, it did not place the call (or cause the call to be placed) that gave rise to the alleged TCPA violation. That means SmartMatch cannot claim the defense of a TCPA lawsuit as damages "suffered as a result of [its] reliance" on Mr. Hastings's alleged misrepresentations.

*Id.* at \*14.

Thus, for Defendant to argue that "Plaintiff wrongly named [Defendant] in this Action," and to accordingly deny sending any of the text messages at issue, it logically follows that it could not have "relied on [Plaintiff's] misrepresentations and her consent to receive text messages." *Compare* ECF No. 25 at 3 n.2 *with id.* at ¶ 39. Defendant alleges only that Plaintiff "misrepresented her name and submitted a false consent form" as its claim for fraud. ECF No. 24 at ¶ 41. But Defendant did not rely on or use Plaintiff's name, or a "false name," in any communications with Plaintiff. *See generally id.* Defendant alleges zero communications that reference either Plaintiff's name or the "false name," *see* ECF No. 4 at ¶ 12, nor does it allege that it used either name for the purposes of any of its (or a third party's) telemarketing communications with her. *See generally* ECF No. 24. Nor did Defendant allege that Plaintiff's submission of both her real name and a "false name" to a third-party website influenced Defendant's decision "to give Ms. Hall's

information and her consent to be contacted to Houses Into Homes." *Id.* at ¶ 39. And Defendant does not plead that it (or a third party) would not have communicated with Plaintiff had she provided one name over another. *Id.*

Defendant simply fails to allege any action or inaction it took because of Plaintiff's alleged submission of two names, instead pointing to its need to defend this lawsuit as its proof of reliance. However, this also plainly fails to satisfy reliance. *See Scalzo*, 2021 U.S. Dist. LEXIS 179257, at *39 ("the Court fails to see how it demonstrates justifiable reliance as Scalzo has failed to allege that he has taken any action or refrained from taking action as the result of any alleged fraudulent statement, let alone that such (in)action was justifiable."); *Betz v. Glob. Telesourcing, LLC*, No. 21-cv-1320, 2021 U.S. Dist. LEXIS 237132, at *17-18 (D.D.C. Dec. 10, 2021) ("The only action that defendant asserts it took in reliance on plaintiff's allegedly fraudulent statements was to expend money on litigation. This Court, and other courts in the D.C. Circuit, has held, however, that the cost of legal services alone is not sufficient to state a valid claim for detrimental reliance.") (collecting cases).

Given that Defendant in no way alleges that it relied upon the "fraudulent" information Plaintiff submitted, perhaps it is instead alleging that the "fraud" was Plaintiff's submission of a consent form when she did not *really* want to receive

messages from Defendant? But such a theory resembles speculative conjecture rather than a "plausible" theory, and nevertheless fails superficial scrutiny. *See Almanza*, 851 F.3d at 1074. Defendant alleges that it obtained consent from an unrelated third-party website, that generated consent for Defendant and at least 57 other entities identified on a separate hyperlinked URL on a clickwrap agreement to which Defendant contends that Plaintiff gratuitously agreed. *See* Ex. A. Did Plaintiff intend to defraud all 58 entities? Or was she simply confused when she received anonymous and illegal text messages from entities unrelated to the original website, informing her she was approved for fake loans, which directed Plaintiff to other unrelated websites? Ultimately, if Defendant suggests that the "fraud" was simply that Plaintiff did not *really* want to receive messages from each of those 58+ entities, it fails to cogently articulate that, and such an allegation would be purely subjective speculation and a far cry from alleging actionable fraud under Rule 9(b). *Accord Viera v. BASF Catalysts LLC*, No. 5:16-cv-1-Oc-30, 2016 U.S. Dist. LEXIS 47787, at *7 (M.D. Fla. Apr. 8, 2016) ("Essentially, while Rule 9(b) permits scienter to be demonstrated by inference, this must not be mistaken for license to base claims of fraud on speculation and conclusory allegations. An ample factual basis must be supplied to support the charges.").

Because Defendant fails to articulate a coherent theory of reliance on any

alleged misrepresentation, this Court should dismiss the counterclaim for fraud.

## B. Even if Defendant adequately alleges that Plaintiff engaged in "fraud," it does not adequately allege it was harmed by the fraud.

Even if this Court were to credit Defendant's fraud allegations and find that it adequately alleges reliance, Defendant fails to allege proximate harm as a result of any "fraud," and fails to allege any damages to which it may be entitled to recover. Specifically, Defendant alleges that the purported fraud caused it harm in the form of "financial loss, including but not limited to the employee resources, costs, and legal fees associated with responding to [Plaintiff]'s allegations and defending against her frivolous and fraudulent claims." ECF No. 24 at ¶ 43.[4] Moreover, Defendant's claim for attorney's fees is factually and legally invalid, and its claimed harmful expenditure of employee resources is facially *de minimis*.

First, Defendant seeks damages in the form of its attorneys' fees, but in doing so, it does not articulate a viable claim for entitlement to those fees. As an initial issue, Defendant did not incur attorneys' fees because of any "fraud," because Defendant's counsel was retained *after* Plaintiff filed her amended

---

[4]    Defendant curiously omits that it did not retain counsel until well-after Plaintiff filed her amended complaint—the operative complaint at issue. *Compare* ECF No. 4 (amended complaint filed on October 6, 2022) *with* ECF No. 8 at ¶ 3 (noting that, on October 17, 2022, "Defendant recently retained the undersigned counsel to defend this putative class action lawsuit" and that it had not completed its investigation of the allegations). Defendant likely omitted this information in an attempt to bolster its claim for damages above a *de minimis* amount.

complaint. *See supra* n.4. So, without incurring legal fees to respond to Plaintiff's alleged "fraud," Defendant's claim that it was harmed by incurring attorneys' fees as a result of Plaintiff's "fraud" is without a basis in fact. And even if that were not the case, it would not matter; incurring fees to defend a lawsuit does not support a claim for damages as a result of fraudulent representations.[5] *Accord Chevron Corp. v. Donziger*, 2013 U.S. Dist. LEXIS 105878, at *12 (S.D.N.Y. July 29, 2013) ("Thus, the allegations that Chevron made misrepresentations in lawsuits it brought against Mr. Donziger and that Mr. Donziger, though aware of their alleged falsity, incurred expenses defending those lawsuits does not state a legally sufficient fraud claim.").

Next, to the extent that Defendant instead seeks to collect damages in the form of its employees' time incurred in responding to Plaintiff's initial complaint—which Defendant does not enumerate or describe because they are transparently *de minimis*—such a claim also fails. An allegation of a generic expenditure of limited employee time is not traceable to any alleged fraud and is nevertheless too speculative and attenuated to satisfy any applicable pleading standard. *Accord Salcedo v. Hanna*, 936 F.3d 1162, 1168 (11th Cir. 2019) (finding that allegation of "time wasted only generally" fails to state a concrete harm "[i]n

---

[5]     And, as explained *infra* Argument § V, Defendant failed to articulate a separate basis for entitlement to attorney's fees, so it may not recover fees anyway.

the absence of a specific time allegation."). As explained in *Atkinson v. Pro Custom Solar LLC*, where a court granted summary judgment against a counterclaiming defendant who alleged that a TCPA plaintiff (1) fraudulently provided a false name and (2) caused the defendant to incur wasted employee time:

> Time spent pitching possible sales of solar panels is not an injury. This is what Momentum does day in and day out in an attempt to inform prospective buyers about its product and convince them to invest in its solar panels. None of Momentum's sales pitches guarantee a future business relationship. This is not just an issue of being unable to quantify damages; Momentum's theory of injury, loss, and damages is pure speculation. If damages "are too remote, too uncertain, or purely conjectural, they cannot be recovered." *Arthur Andersen & Co. v. Perry Equip. Corp.*, 945 S.W.2d 812, 816 (Tex. 1997). Because Momentum has no evidence of injury and damages, Atkinson is entitled to summary judgment on all three of its counterclaims.

Case No. SA-21-CV-00178, 2022 U.S. Dist. LEXIS 158629, at *31-32 (W.D. Tex. Sept. 1, 2022).

Generic allegations that Defendant expended minimal time to initially respond to a complaint—whether by attorneys or employees—is also insufficient:

> Defendant has not only failed to state what misrepresentations it relied upon, it has also failed to state *how* it relied upon any misrepresentation by Stratton, or what 'was obtained or given up thereby.' To the extent Defendant contends that defending a lawsuit could satisfy this element of its claim for fraud and deceit, the court rejects that contention. Defendant has provided no authority to support such a contention, and, quite simply, it does not make sense.

*United States EEOC v. Sleeveco, Inc.*, No. 2:08-CV-00106, 2008 U.S. Dist. LEXIS

130629, at *16 (N.D. Ga. Dec. 8, 2008); *accord Adana Investing, Inc. v. Wells Fargo Bank*, No. 1:16-cv-21562, 2017 U.S. Dist. LEXIS 219596, at *47-48 (S.D. Fla. Apr. 7, 2017) ("Even if this were a viable claim, the Court agrees with Plaintiff that there is no record evidence to demonstrate that Plaintiff was somehow engaged in conduct that caused damage to Defendants. Defendants' argument that any incurred damages stem from their attorney's fees in defending this lawsuit is simply unsupported in law.").

Georgia courts also look at such a frivolous claim for damages with great skepticism:

> The only damages alleged by appellee are the expenses it has incurred as the result of defending the instant lawsuit. Such damages are unrelated to any fraud allegedly perpetrated by appellant prior to the filing of his complaint, and they cannot support appellee's fraud claim.
>
> The gravamen of appellee's allegations is that it has been required to defend itself against an allegedly spurious claim asserted by appellant. While in an independent context those allegations might be deemed to state a claim for malicious use of process, such a claim cannot be predicated upon appellant's mere filing of the main action and therefore cannot be made as a counterclaim in the subject lawsuit. Appellee cannot avoid this rule of law merely by characterizing its claim for expenses incurred in defending against appellant's claim as one which is based upon fraud. Appellee's legal remedy is to await the conclusion of the instant litigation, and, if appropriate, then to pursue its claims concerning malicious use of process and stubborn litigiousness in a separate action.

*Barnes v. White Cty. Bank*, 170 Ga. App. 681, 682-83 (1984).

Lastly, *even if* Plaintiff submitted "fake consent" to Defendant, her claim against it for its violations of the TCPA following that submission remains appropriate and lawful. As the court explained in *Mey v. Castle Law Grp., PC*:

> Accepting the allegations in the counterclaims as true, the Court finds that the defendants have failed to state claims for fraud. *The basis of the fraud claim, that Mey misrepresented her interest in the qualification process "in order to trap the purported telemarketers into a lawsuit," is the type of conduct encouraged by the TCPA.*
>
> The statutory damages available under the TCPA are, in fact, specifically designed to appeal to plaintiffs' self-interest and to direct that self-interest toward the public good: like statutory compensation for whistleblowers, they operate as bounties, increasing the incentives for private enforcement of law. Designing a cause of action with the purpose of enlisting the public in a law's enforcement scheme is a well-established tool that can be found in areas ranging from antitrust and civil rights law to environmental law and false claims. While these schemes do not eliminate the constitutional requirement of an injury-in-fact, neither do they impose an additional hurdle simply because the plaintiff may have a motive beyond mere compensation for his injury.

No. 5:19-CV-185, 2020 U.S. Dist. LEXIS 174894, at *6-7 (N.D.W. Va. Sep. 22, 2020) (dismissing fraud counterclaim in TCPA case).

Defendant's counterclaim allegations boil down to it seeking damages because it responded (informally) to Plaintiff's original complaint, and subsequently retained counsel to litigate different claims than those it protests through its counterclaim. Nothing about this alleges an articulable harm tied to Plaintiff's alleged fraud. Defendant fails to identify any harm it incurred with

15

sufficient specificity, fails to articulate its alleged expenditure of "employee resources," and fails to connect any of those harms to Defendant's allegation: that Plaintiff provided it with the names "June Hall" and "Ollie Mathis" alongside her phone number when it alleges that she submitted consent forms to a third-party entity on an unrelated website. And Defendant advances these arguments while it claims not to have been responsible for the communications at issue anyway. For these reasons, this Court should dismiss Defendant's fraud claims with prejudice.

## IV.    Defendant fails to state a claim for breach of contract.

### A.    Defendant fails to allege the existence of an enforceable contract.

In short, Defendant's breach of contract-related claims fail because Defendant does not allege the existence of an enforceable contract. "The essential elements of a contract under Georgia law are: (1) parties able to contract; (2) consideration; (3) a subject matter upon which the contract can operate; and (4) the assent of the parties to the terms of the contract." *Crystal Steel Fabricators, Inc. v. AMEC Foster Wheeler Programs, Inc.*, 349 F. Supp. 3d 1364, 1368 (N.D. Ga. 2017) (Cohen, J.). Defendant fails to allege an exchange of mutual consideration, fails to describe the subject matter of the contract, and fails to allege that Defendant agreed to the terms of the "contract."

Regarding the exchange of consideration, Defendant simply does not allege

that Plaintiff provided any consideration. Nor can it, because binding Eleventh Circuit precedent acknowledges that any consent Plaintiff provided through her alleged submission to renttoownhomefinder.com was given gratuitously, and as a result, is not contractual. In *Medley v. Dish Network, LLC*, the Eleventh Circuit evaluated whether a consumer could revoke consent to receive automated calls if the original consent was "given in a bargained-for contract." 958 F.3d 1063, 1070 (11th Cir. 2020). The Circuit Court concluded that contractual consent could not be unilaterally revoked, and in doing so, contrasted the allegations in *Medley* with those in *Osorio v. State Farm Bank, F.S.B.*, 746 F.3d 1242 (11th Cir. 2014). In *Osorio*, the Eleventh Circuit addressed whether consent could be unilaterally revoked if it was given gratuitously—in that case, a credit application—and concluded that gratuitous consent *could* be revoked. *Id.* at 1255; *see also Medley*, 958 F.3d at 1070. In doing so, the Eleventh Circuit twice emphasized that providing consent to be contacted as part of an application or submission form is "gratuitous" and not "contractual." *Id.*

The facts at issue here are even further removed and less contractual than a credit card application. First, there is no exchange of consideration, as Defendant identifies only a consent form to receive promotional messages—which a consumer accepts *gratuitously*—as the "contract." ECF No. 24 at ¶ 12. In fact, the

"contract" explicitly notes that "[c]onsent to such promotional message [sic] is not a condition of purchase." *Id.* Second, Defendant does not even attempt to suggest that Plaintiff exchanged consideration with *Defendant and 57 other entities "including their affiliates"* as part of the consent form Plaintiff allegedly submitted to a third party. *See* Ex. A.[6]

Similarly deficient, Defendant fails to identify "a subject matter upon which the contract can operate." As explained in greater detail *infra* Argument § IV.B, Defendant does not articulate the terms of the contract or the intended scope of the contract, and—as explained below—relatedly fails to explain what contract terms Plaintiff breached. Simply put, Defendant does not identify any contract.

Defendant also does not allege that it assented to the terms of any "contract." This failure to allege mutual assent additionally dooms Defendant's counterclaim. *See, e.g.*, *Kellogg v. Fannie's Inc.*, No. 1:18-CV-1929, 2019 U.S. Dist. LEXIS 247300, at *10 (N.D. Ga. Jan. 11, 2019) ("Fannie's alleges only that Kellogg received policies, not that she agreed to be bound by their contents or assented to a contract. These allegations are insufficient.") (Cohen, J.). Because Defendant fails to allege the existence of a contract, the breach of contract claim fails.

---

[6]     To the extent Defendant seeks to advance a convoluted "third party beneficiary" claim for breach of contract, such allegations are entirely absent in its counterclaims. *See Kerfoot v. FNF Servicing, Inc.*, No. 1:13-cv-33, 2013 U.S. Dist. LEXIS 153849, at *18 (M.D. Ga. Oct. 25, 2013).

**B.**    **Even if a contract existed, Defendant fails to allege a breach of the contract.**

Even if the Court found that Defendant alleges the existence of an actionable contract—it should not—Defendant does not allege a breach of the contract. Defendant's lone allegation as to the "breach" of contract is that "Ms. Hall breached her agreement by submitting her contact information and providing consent under a false name and then suing Xanadu for sending the very text messages she requested." ECF No. 24 at ¶ 48. *Even if that were true*, Defendant fails to identify any contractual term that Plaintiff breached by "providing consent under a false name." Failing to identify the contract, failing to attach the contract, and failing to "stat[e] with specificity the contract language upon which Defendant relies . . . [is] woefully insufficient to state a cause of action upon which relief can be granted." *Karitanyi v. Seterus Inc.*, No. 1:17-CV-03432, 2018 U.S. Dist. LEXIS 65333, at *9 (N.D. Ga. Feb. 5, 2018) (dismissing breach of contract claim). Because Defendant fails to allege any contractual terms—let alone any terms that Plaintiff breached—this Court should dismiss its breach of contract counterclaim.

**C.**    **Even if a contract existed, and Plaintiff breached the contract, Defendant does not identify any harm or entitlement to damages proximately caused by the alleged breach.**

Even if Defendant adequately alleged the existence of a contract and a breach of that contract, it fails to allege that it was harmed by Plaintiff's breach.

19

Akin to its allegations supporting its fraud claim, Defendant suggests that the expenditure of its employee time responding to Plaintiff's original complaint, and the expenditure of attorney's fees in defense of this action. These claims fail for the same reasons discussed *supra* Argument § III.B.

Similarly, to the extent that Defendant instead seeks to collect "damages" in the form of its employees' time incurred in responding to Plaintiff's initial complaint—which Defendant does not enumerate, describe, or articulate through its counterclaims—such a claim also fails. First, the expenditure of limited employee time is not traceable to any alleged breach. *See Wausau Underwriters Ins. Co. v. Danfoss, LLC*, No. 2:14-CV-14420, 2015 U.S. Dist. LEXIS 168069, at *49 (S.D. Fla. Dec. 16, 2015) ("damages generally must be proximately caused by the defendant's alleged breach."). And Defendant's employees' response to Plaintiff's "fraudulent consent" submission—the "employee time" ostensibly alleged but insufficiently pled—is facially *de minimis*.[7] *See Hastings*, 2022 U.S. Dist. LEXIS 158491, at *13 (counterclaim allegations of "the waste of the call agent's time when speaking with Mr. Hastings . . . [and] the resources required to defend against Mr. Hastings's TCPA lawsuit" are insufficient to state damages for fraud, because the defendant "did not explain how the agents are compensated or

---

[7]    In fact, Defendant states that the delivery of the subject text messages was an automated, "computer-generated" process. *See* ECF No. 25 at 5, 25.

how they perform their work, leaving this Court to guess how the call caused any damage (let alone damage that is not *de minimis*).").

And to remedy this non-existent breach of the non-existent contract, Defendant seeks to recover damages in the amount of "cost of attorneys' fees and court costs incurred in the defense of this lawsuit." ECF No. 24 at ¶ 50. But this is not supported by either law or "contract," because Defendant fails to allege any specific contract provision that entitles it to attorneys' fees—a Georgia law requirement. *See McCabe v. Daimler AG*, No. 1:12-CV-2494-MHC, 2015 U.S. Dist. LEXIS 182877, at *17 (N.D. Ga. Aug. 19, 2015) (Cohen, J.); *Pulte Home Corp. v. Woodland Nursery & Landscapes*, 230 Ga. App. 455, 458 (1998) ("A recovery of . . . attorney's fees in a contract action must be based upon evidence which shows more than a mere breach of contract."). Fatal to its fee claim, Defendant cites no contract language which would allow it to collect attorneys' fees as a result of its breach of contract allegations.

On the other hand, Defendant alleges entitlement to attorney's fees under O.C.G.A. § 13-6-11. ECF No. 24 at ¶¶ 57-61. Notwithstanding the fact that such allegations are pled as a separate count—which is improper, as addressed *infra* Argument § V—Defendant is not entitled to attorney's fees under that statute.

Defendant's counterclaim merely recites the language of § 13-6-11 by

alleging that Plaintiff "acted in bad faith, has been stubbornly litigious, and has caused Xanadu unnecessary trouble and expense." ECF No. 24 at 59. These entirely conclusory allegations are baseless, and Defendant appears to subsequently abandon the latter two claims in the following paragraphs of its claim, focusing only on "bad faith" conduct. Regardless, "[w]hen [a party] relies upon stubborn litigiousness or unnecessary trouble and expense as the basis of the award for attorneys' fees without showing bad faith, the plaintiff must show the absence of a bona fide dispute between the parties." *Owens v. GE Comp.*, No. 1:09-CV-1804, 2010 U.S. Dist. LEXIS 150840, at *24 (N.D. Ga. Jan. 19, 2010). Defendant fails to allege facts that meet this standard, and briefing on its motion to dismiss—*see* ECF Nos. 25-26—proves the existence of a bona fide dispute.

Defendant does superficially attempt to substantiate its allegation that Plaintiff acted in "bad faith," but its allegations are conclusory and thus fail. "Bad faith cannot be prompted by an honest mistake as to one's rights or duties, bad judgment, or negligence; it requires a dishonest purpose, some moral obliquity, conscious doing of wrong through some self-interested or sinister motive." *Owens*, No. 1:09-CV-1804, 2010 U.S. Dist. LEXIS 150840, at *24. Defendant alleges this in only conclusory terms. Specifically, Defendant claims that Plaintiff acted in bad faith by (1) submitting fraudulent lead information—which was not fraudulent, *see*

*supra* Argument § III; (2) "breaching the plain language [sic]"—without alleging the "plain language"; and (3) "breaching . . . [the] implied covenant of good faith and fair dealing,"—which fails for the reasons discussed *infra* Argument § IV.D. ECF No. 24 at ¶ 60. These allegations fail to plausibly allege that Plaintiff's initial filing of the complaint was the result of a "sinister motive," particularly given that Plaintiff promptly filed an amended complaint addressing the complained-of allegations before Defendant's counsel even entered an appearance.

Lastly, even if the Court were to find that Plaintiff's alleged submission to an unrelated website allegedly using two different names was in bad faith rather than "an honest mistake" or error interpreting the scope of the consent form (to at least 58 unrelated entities, including Defendant), then Defendant's claim should nevertheless be dismissed for its unclean hands. Specifically, through its communications to Plaintiff, Defendant (or a third-party) falsely and fraudulently represented that Plaintiff was approved for, or about to be approved for, a loan that she never applied for or inquired about. *See* ECF No. 25-1 at ¶¶ 15-16. These fraudulent representations undercut any claim Defendant has for equitable relief or attorneys' fees. *See King v. Edwards*, 559 F. Supp. 75, 88 (N.D. Ga. 1982).

### D.    Defendant fails to state a claim for breach of implied duties.

Through its counterclaims, Defendant suggests that "Ms. Hall owed a

contractual obligation to Xanadu consenting to receive communications" and "breached the implied duty of good faith and fair dealing by submitting contact information and providing consent under a false name and then suing Xanadu for sending the very text messages she requested. ECF No. 25 at ¶¶ 52, 54. Defendant's claim for a breach of implied duty of good faith and fair dealing is derivative of its breach of contract claim, and fails for the same reasons.

"[U]nder Georgia law, a claim for breach of the duty of good faith and fair dealing cannot stand as an independent cause of action apart from an underlying claim for breach of contract." *Irving v. Bank of Am.*, 497 F. App'x 928, 930 (11th Cir. 2012). "General allegations of breach of the implied duty of good faith and fair dealing not tied to a specific contract provision are not actionable." *Am. Casual Dining, L.P. v. Moe's Sw. Grill, L.L.C.*, 426 F. Supp. 2d 1356, 1370 (N.D. Ga. 2006). Rather, "to state a claim for breach of the implied covenant, the plaintiff must be found to have stated a claim for breach of contract (since the implied covenant cannot be breached independently of an express contract term)." *Id.*

Defendant identifies no specific contract provision through which Plaintiff allegedly breached an implied duty. Nor can it. In fact, Defendant's predicate suggestion that she was "contractual[ly] obligat[ed] to Xanadu consenting to receive communications" flies in the face of binding Eleventh Circuit law finding

24

such consent to be gratuitous rather than contractual, *see supra* Argument § III.A.

Because these allegations are materially identical to Defendant's breach of contract

allegations, this Court should dismiss Defendant's claim for breach of implied duty

for the same reason. *Milon v. Bank of Am., N.A.*, No. 1:14-CV-01405, 2015 U.S.

Dist. LEXIS 181666, at *29 (N.D. Ga. June 8, 2015) (dismissing claim for breach

of implied duty of good faith due to the absence of a breach of contract claim.").

## V.    Count IV of Defendant's counterclaim fails to state a cause of action.

Defendant alleges through a separate count that it is entitled to attorneys'

fees under O.C.G.A. § 13-6-11. However, this count must be dismissed because

O.C.G.A. § 13-6-11 does not establish an independent cause of action. *See*

*Brookwood Funding, LLC v. Avant Credit Corp.*, No. 1:14-CV-2960-SCJ, 2015

U.S. Dist. LEXIS 191679, at *19 (N.D. Ga. July 28, 2015) (dismissing claim under

O.C.G.A. § 13-6-11 because a "claim for attorney's fees pursuant to O.C.G.A. §

13-6-11 is a remedy" rather than "an independent cause of action").

### Conclusion

For the aforementioned reasons, Plaintiff requests that the Court dismiss

Defendant's counterclaims with prejudice.

Date: January 24, 2023            */s/ Rachel Berlin Benjamin*
                                 Rachel Berlin Benjamin
                                 Georgia Bar No. 707419
                                 rachel@hallandlampros.com

25

Brian J. Sutherland
Georgia Bar No. 105408
brian@hallandlampros.com
300 Galleria Pkwy SE, Suite 300
Atlanta, GA 30339
Telephone: (404) 876-8100
Facsimile: (404) 876-3477

Alex D. Kruzyk (*pro hac vice*)
**PARDELL, KRUZYK & GIRIBALDO, PLLC**
501 Congress Avenue, Suite 150
Austin, Texas 78701
Tele: (561) 726-8444
akruzyk@pkglegal.com

*Counsel for Plaintiff and the proposed class*

## CERTIFICATE OF SERVICE

I hereby certify that on January 24, 2023, I filed the foregoing with the Clerk of Court using the Court's CM/ECF system, which will provide electronic notice to all counsel of record.

*/s/ Alex D. Kruzyk*
Alex D. Kruzyk

## CERTIFICATE OF COMPLIANCE

I hereby certify that the foregoing document has been prepared with Times New Roman 14 point font, in compliance with Local Rule 5.1(c).

*/s/ Rachel Berlin Benjamin*
Rachel Berlin Benjamin