IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| JUNE HALL, on behalf of herself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>XANADU MARKETING, INC. d/b/a Houses Into Homes,<br><br>Defendant. | CIVIL ACTION FILE<br><br>NO. 1:22-CV-3795-MHC |

## ORDER

This case comes before the Court on Defendant Xanadu Marketing, Inc. ("Xanadu")'s Amended Motion to Dismiss Plaintiff's Amended Class Action Complaint ("Am. Mot. to Dismiss") [Doc. 25] and Plaintiff June Hall ("Hall")'s Motion to Dismiss for Failure to State a Claim Regarding Defendant's Amended Counterclaims[1] [Doc. 27].

---

[1] Hall's Motion to Dismiss Xanadu's Original Counterclaims [Doc. 18] is **DENIED AS MOOT.**

I.   **BACKGROUND**[2]

Hall alleges that she registered her cellular telephone number with the Do Not Call ("DNC") registry. Am. Compl. ¶¶ 8-9, 11.[3] Despite being registered with

---

[2] Because this case is before the Court on a motion to dismiss, the facts are presented as alleged in Hall's Amended Class Action Complaint ("Am. Compl.") [Doc. 4]. Silberman v. Miami Dade Transit, 927 F.3d 1123, 1128 (11th Cir. 2019) (citation omitted).

[3] A member of the DNC registry is a

> residential telephone subscriber who has registered his or her telephone number on the national do-not-call registry of persons who do not wish to receive telephone solicitations that is maintained by the Federal Government. Such do-not-call registrations must be honored indefinitely, or until the registration is cancelled by the consumer or the telephone number is removed by the database administrator. Any person or entity making telephone solicitations (or on whose behalf telephone solicitations are made) will not be liable for violating this requirement if:
>
> (i) It can demonstrate that the violation is the result of error and that as part of its routine business practice, it meets the following standards:
>
>> (A) Written procedures. It has established and implemented written procedures to comply with the national do-not-call rules;
>>
>> (B) Training of personnel. It has trained its personnel, and any entity assisting in its compliance, in procedures established pursuant to the national do-not-call rules;
>>
>> (C) Recording. It has maintained and recorded a list of telephone numbers that the seller may not contact;

the DNC registry, Hall alleges that she received a "dozen similar [unsolicited] text messages" from an unknown sender, later referred to as "Houses into Homes," regarding a personal loan approval. Id. ¶¶ 12-15.

Hall avers that the Houses Into Homes has the same principal place of business as Xanadu. Id. ¶¶ 18-20. Xanadu markets itself as a lead generator for internet marketing programs, including personal and mortgage loans, and advertises consumer finance websites for sale. Id. ¶¶ 21-22. Hall alleges that Xanadu delivered the messages advertising or marketing Xanadu's business to her number that was registered on the DNC registry, for a non-emergency purpose. Id. ¶¶ 23-26. Hall alleges that she was harmed by Xanadu not providing the name of the entity on whose behalf the communication was made and "she spent several hours attempting to identify the entity responsible for sending the text messages at

---

> (D) Accessing the national do-not-call database. It uses a process to prevent telephone solicitations to any telephone number on any list established pursuant to the do-not-call rules, employing a version of the national do-not-call registry obtained from the administrator of the registry no more than 31 days prior to the date any call is made, and maintains records documenting this process.

47 C.F.R. § 64.1200(c)(2).

3

issue as well as additional time investigating ways to get Defendant to stop delivering the text messages." Id. ¶¶ 61, 63.

Hall asserts that Xanadu's conduct ran afoul of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227, by delivering to Hall and other members of a class that Hall seeks to represent more than one solicitation call or text message in a twelve-month period. Id. ¶¶ 56-65. Hall alleges that Xanadu violated 47 U.S.C. § 227(c)(5) and 47 C.F.R. § 64.1200(d)(4). Id. ¶¶ 61-62, 65.

## II. ANALYSIS

### A. Xanadu's Motion to Dismiss Hall's Amended Complaint Under Rule 12(b)(1).

#### 1. Legal Standard

Because standing is jurisdictional, a motion to dismiss for lack of standing is treated as a motion under Rule 12(b)(1) of the Federal Rules of Civil Procedure. Stalley ex rel. U.S. v. Orlando Reg'l Healthcare Sys., Inc., 524 F.3d 1229, 1232 (11th Cir. 2008). A challenge to standing under Rule 12(b)(1) may be presented as either a facial or factual attack on subject matter jurisdiction.

> Attacks on subject matter jurisdiction, which are governed by Rule 12(b)(1), come in two forms: facial or factual attack. Lawrence v. Dunbar, 919 F.2d 1525, 1528–29 (11th Cir. 1990). A "facial attack" challenges whether a plaintiff "has sufficiently alleged a basis of subject matter jurisdiction, and the allegations in his complaint are taken as true for the purposes of the motion." Id. at 1529 (quotation marks omitted). A "factual attack," in contrast, challenges the existence

4

of subject matter jurisdiction irrespective of the pleadings, and extrinsic evidence may be considered. Id. A district court evaluating a factual attack on subject matter jurisdiction "may proceed as it never could" at summary judgment and "is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case." Id. (quotation marks omitted).

Kennedy v. Floridian Hotel, Inc., 998 F.3d 1221, 1230 (11th Cir. 2021); see also Gardner v. Mutz, 962 F.3d 1329, 1340 (11th Cir. 2020) ("In adjudicating a facial attack, the district court takes the allegations as true in deciding whether to grant the motion. By contrast, when a court confronts a 'factual' attack, it needn't accept the plaintiff's facts as true; rather, the district court is free to independently weigh facts and make the necessary findings.") (citations and internal punction omitted). Additionally, on a factual attack, the Court "is not constrained to view [facts] in the light most favorable to the plaintiff." Houston v. Marod Supermarkets, Inc., 733 F.3d 1323, 1336 (11th Cir. 2013) (citation and internal quotation marks omitted).

Standing "is the threshold question in every federal case, determining the power of the court to entertain the suit." Warth v. Seldin, 422 U.S. 490, 498 (1975). Article III of the United States Constitution expressly limits federal jurisdiction to "cases and controversies" and does not permit federal courts to issue advisory opinions. Miller v. F.C.C., 66 F.3d 1140, 1145 (11th Cir. 1995) (citing Flast v. Cohen, 392 U.S. 83, 94-96 (1968)). "To have a case or controversy, a litigant must establish that he [or she] has standing," United States v. Amodeo, 916

5

F.3d 967, 971 (11th Cir. 2019), which requires the litigant to show (1) an injury in fact that (2) is fairly traceable to the challenged action of the defendant and (3) is likely to be redressed by a favorable decision. Lujan v. Defs. of Wildlife, 504 U.S. 555, 560-61 (1992). The three components form an "irreducible constitutional minimum." Id. at 560. "The plaintiff, as the party invoking federal jurisdiction, bears the burden of establishing these elements" and, where a case is in the pleading stage, "the plaintiff must clearly allege facts demonstrating each element." Spokeo, Inc. v. Robins, 578 U.S. 330, 338 (2016) (citations and internal punction omitted).

### 2. Discussion

Xanadu[4] mounts both a facial and factual attack on Hall's standing, and claims that Hall lacks standing to assert a violation of the TCPA because she suffered no injury in fact from Xanadu's alleged failure to identify itself based on (1) Hall initially consenting to the receipt of messages, (2) Hall's ability to stop receiving messages within seconds of their receipt, and (3) Hall's alleged injury is not traceable to a violation of the seller-identification requirements of the TCPA.

---

[4] Xanadu asserts that Houses Into Homes is a "separate Florida corporation that is a corporate affiliate, not a d/b/a, of Xanadu[,]" but Xanadu did not file a motion to change its name in the present action. Xanadu's Am. Mot. Dismiss at 3 n.2

Xanadu's Am. Mot. to Dismiss at 11-17. In response, Hall argues that she has alleged a tangible injury that satisfies standing requirements, and that any consent to receive the communications by Hall does not preclude a finding of an injury traceable to Xanadu's misconduct. Hall's Resp. in Opp'n. to Def.'s Am. Mot. to Dismiss ("Hall's Resp.") [Doc. 26] at 9-16.[5] Although Xanadu characterizes its motion as both a facial and factual attack on Hall's standing, because the Court finds merit in Xanadu's factual attack, only it needs to be addressed. See McElmurray v. Consol. Gov't of Augusta-Richmond Cnty., 501 F.3d 1244, 1251 (11th Cir. 2007) ("The district court has the power to dismiss for lack of subject matter jurisdiction on any of three separate bases: (1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts.") (citation omitted); Pro. Airline Flight Control Ass'n v. Spirit Airlines Inc., 593 F. Supp. 3d 1173, 1178 (S.D. Fla. 2022), aff'd, 65 F.4th 647 (11th Cir. 2023) (addressing only the meritorious facial attack where the defendant asserted both facial and factual challenges); Abbott Point of Care, Inc. v. Epocal, Inc., No. 5:09-

---

[5] The Court cites to the ECF page number rather than to the page number in Hall's response.

7

CV-1678-SLB, 2010 WL 11527466, at *4 (N.D. Ala. Sept. 7, 2010), aff'd, 666 F.3d 1299 (Fed. Cir. 2012) (same).

Xanadu's factual attack is supported by the declaration of its President Joe Delfgauw, who is also the President of Houses Into Homes. Delfgauw Decl. [Doc. 25-1] (Dec. 27, 2022) ¶.[6] The declaration indicates that Xanadu and its affiliate Houses Into Homes collect information from consumers prior to sending text messages and "maintain[] policies and procedures to ensure that it and its affiliates do not send text messages to consumers who do not wish to receive text messages." Delfgauw Decl. ¶¶ 3-5 (requiring consumers to enter names, phone numbers, email addresses, and checking a consent box on the website prior to

---

[6] Hall objects to the Court considering Xanadu's declaration. Hall's Resp. at 27 ("[T]his Court should decline to consider Defendant's self-serving allegations and any arguments based on them here—including Defendant's unproven allegations that Plaintiff "requested the calls," in evaluating the Defendant's motion."). However, factual attacks challenge the existence of standing in fact and, in such cases, "no presumptive truthfulness attaches to plaintiff's allegations" and the court may consider testimony and affidavits irrespective of the pleading. McElmurray, 501 F.3d at 1251; see also Orlando Reg'l Health Care Sys., Inc., 524 F.3d at 1233 ("By contrast, a factual attack on a complaint challenges the existence of subject matter jurisdiction using material extrinsic from the pleadings, such as affidavits or testimony."); Morrison v. Amway Corp., 323 F.3d 920, 925 (11th Cir. 2003) (stating that, in assessing a factual challenge to subject matter jurisdiction, "the district court may consider extrinsic evidence such as testimony and affidavits.").

submitting a request). The declaration includes language of the following disclaimer alongside the consent box that consumers check prior to receiving texts:

> By checking and clicking submit, I agree and expressly grant my consent to the site and their partners' to contact me regarding programs and offers via email or telephone using automated technology to any wireless number I have provided in order to provide me with important information and exclusive offers. I understand that message & data rates may apply. I also acknowledge that I may receive up to 3 messages per week. I also acknowledge that I may receive additional email and / or phone calls using automated technology and text messages. Reply STOP to the message to end all messages. Text HELP for customer service or call (800) 370-6254. I have read and agree to the Terms of Service and the Privacy Policy. Consent to such promotional message is not a condition of purchase.*

Id. ¶ 6. Additionally the term "their partners" hyperlinks to a list of affiliates providing notice that both Xanadu and Houses Into Homes are parties with authorization to send texts from consumers checking the consent box. Id. ¶¶ 6-7.

The declaration further states that "June Hall visited one of Xanadu's websites, https://renttoownhomefinder.com, on February 10, 2022[,] at 5:08 [A.M.] requesting information about real estate investments." Id. ¶ 12. She provided her phone number, email address, and checked the box expressing consent to contact her number with automated technology. Id. Additionally, the IP address for the request "geolocated to Atlanta, Georgia, where Ms. Hall resides." Id. Another request ("the second request") with the same phone number, email, and IP address as the first request but with the name of "Ollie Austin Mathis" was also submitted

9

on February 10, 2022, at 5:08 A.M. Id. ¶ 13. A third request with the same information as the second request, but with a different IP address, was also submitted on February 10, 2022, at 5:08 A.M. Id. ¶ 14. As a result of the first lead submission, for which written consent to contact the phone number was received, two text messages were sent by House Into Homes to the recipient on February 10, 2022, at 5:11 A.M. and 5:16 A.M. Id. ¶¶ 15-16. At 5:21 A.M., the recipient of the two text messages for the first lead submission texted "STOP" which was followed by an immediate message stating, "House into Homes: You have opted out and will no longer receive messages. Reply Help for Help." Id. ¶ 17. A similar series of events followed in response to the second and third lead submissions for which consent to contact the phone number was obtained: One or two text messages were sent to the recipient, and when the recipient texted back "STOP[,]" a statement that messages would no longer be sent followed. Id. ¶¶ 18-22.

Xanadu argues that the texts sent to Hall were solicited through Hall's consent, and therefore any corresponding invasion to Hall's privacy is traceable to Hall's own conduct, Xanadu's Mot. to Dismiss at 14-17. Hall responds that she "disagrees" with Xanadu's contention that Hall invited the communication, but contends that, even if she invited the communication, she still has standing. Hall's Resp. at 14. Hall's position is that even if she "invited the harm caused by

10

[Xanadu's] non-disclosures by submitting a consent form on an unrelated third-party website," she still suffered an injury that is traceable to Xanadu's purported misconduct. Id. at 14-15. Hall relies on Fed. Election Comm'n v. Ted Cruz for Senate, 142 S. Ct. 1638 (2022), where the Supreme Court held that a campaign finance law that restricted the use of post-election contributions to repay campaign debts unconstitutionally burdened political speech. With respect to the defendants' standing to challenge the constitutionality of the statute's limitation, the Supreme Court rejected the argument that the defendants' injury was self-inflicted because the injuries "are directly inflicted by the FEC's threatened enforcement of the provisions they now challenge," and the fact that they chose to subject themselves to the consequences of the statute "does not change the fact that they are subject to them, and will face genuine legal penalties if they do not comply." Id. at 1647. Unlike the defendants in Cruz, Hall has not brought an action to challenge the constitutionality of a statute (in this case, the TCPA), but actually seeks to recover damages under the statute.

The TCPA authorizes the Federal Communications Commission ("FCC") to promulgate regulations "concerning the need to protect residential telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object." 47 U.S.C. § 227(c)(1). 47 C.F.R. § 64.1200(d) provides, in pertinent part,

11

that "[n]o person or entity shall initiate any call for telemarketing purposes to a residential telephone subscriber unless such person or entity has instituted procedures for maintaining a list of persons who request not to receive telemarketing calls made by or on behalf of that person or entity." A text message to a cellular telephone qualifies as a "call" under the TCPA. Campbell-Ewald Co. v. Gomez, 577 U.S. 153, 156 (2016).

The TCPA provides recovery for text messages sent without "prior express consent[.]" Lucoff v. Navient Sols., LLC, 981 F.3d 1299, 1304 (11th Cir. 2020) ("The TCPA prohibits callers from using an ATDS or an artificial or prerecorded voice to make non-emergency calls to a person's cell phone unless the call is made with the person's prior express consent."). Providing a cellular telephone number to a company "qualifies as prior express consent under the TCPA[.]" Lawrence v. Bayview Loan Servicing, LLC, 666 F. App'x 875, 881 (11th Cir. 2016).[7] "Prior

---

[7] The FCC has explained that "persons who knowingly release their phone numbers have in effect given their invitation or permission to be called at the number which they have given, absent instructions to the contrary." Murphy v. DCI Biologicals Orlando, LLC, 797 F.3d 1302, 1306 (11th Cir. 2015) (citing In the Matter of Rules & Regs. Implementing the Tel. Consumer Prot. Act of 1991, 7 F.C.C. Rcd. 8752 (1992)).

express consent is an affirmative defense against TCPA claims[.]" Franklin v. Cenlar FSB, No. 1:20-CV-1410-MLB-WEJ, 2022 WL 2388598, at *5 (N.D. Ga. Mar. 30, 2022), R&R adopted, No. 1:20-CV-1410-VMC, 2022 WL 2388600 (N.D. Ga. May 26, 2022) (citing Murphy, 797 F.3d at 1304-05); see also Grieben v. Fashion Nova, Inc., 2022 WL 4598649, at *5 (S.D. Fla. Sept. 29, 2022) (where the plaintiff did not ask to be placed on the do not call list, the plaintiff lacked standing to sue for an alleged violation) (citing Cordoba v. DIRECTV, LLC, 942 F.3d 1259, 1271 (11th Cir. 2019)). Here, Hall does not provide any evidence by way of declaration to dispute Xanadu's declaration that she consented to receiving the texts. Instead, Hall argues that her allegations in the Amended Complaint control, but in a factual challenge the trial court "is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case [and] no presumptive truthfulness attaches to plaintiff's allegations[.]" Dunbar, 919 F.2d at 1529.

The remaining cases Hall cites are inapplicable given the uncontroverted affidavit evidence showing that Hall actually solicited the text messages. See Underwood v. IFA Holdings, LLC, No. 1:21-CV-00830-ACA, 2022 WL 2307738, at *3 (N.D. Ala. June 27, 2022) (denying a motion to dismiss because "allegation[s] that [plaintiff] suffered a tangible injury in the form of wasted time . . . [in] tracking down who sent [unsolicited messages,]" were sufficient to

13

establish standing), Persichetti v. T-Mobile USA, Inc., No. 1:19-CV-02424-JPB, 2020 WL 4811003 (N.D. Ga. Aug. 17, 2020) (denying a motion to dismiss when plaintiff "specifically detailed the actions he took in responding to the text messages and his attempts to stop future [unsolicited] text messages."). Moreover, Hall's allegations that "she spent several hours attempting to identify the entity responsible for sending the text messages at issue as well as additional time investigating ways to get [Xanadu] to stop delivering the text messages[,]" Am. Compl. ¶¶ 61, 63, are insufficient to create an injury in fact for standing purposes. See Tsao v. Captiva MVP Rest. Partners, LLC, 986 F.3d 1332, 1345 (11th Cir. 2021) (holding that a plaintiff "cannot manufacture standing by incurring costs in anticipation of non-imminent harm[.]"). In Tsao, the Eleventh Circuit held that no standing existed despite a plaintiff expend[ing] time and effort" to cancel credit cards and deal with the impact of potential cyber-attacks. Id. at 1336.

Accordingly, Xanadu's Motion to Dismiss the Amended Complaint based upon lack of subject matter jurisdiction due to the absence of standing is **GRANTED**. Hall's Amended Complaint is **DISMISSED WITHOUT**

**PREJUDICE.**[8]  Because the Court has granted Xanadu's motion to dismiss pursuant to Rule 12(b)(1), it is unnecessary to consider Xanadu's alternative argument that Hall's Amended Complaint fails to state a claim under Rule 12(b)(6).

### B. Hall's Motion to Dismiss Xanadu's Amended Counterclaims

Xanadu has filed Amended Counterclaims [Doc. 24] alleging four separate causes of action for damages: (1) fraud, (2) breach of contract, (3) breach of implied duty of good faith and fair dealing, and (4) attorneys' fees under O.C.G.A. § 13-6-11.  Am. Countercls. ¶¶ 36-61.  However, given that Hall's Amended Complaint has been dismissed due to a lack of subject matter jurisdiction, this Court must now consider whether the Amended Counterclaims are properly before the Court.

"[A] court *sua sponte* can raise a jurisdictional defect at any time, leading to dismissal of the relevant action."  Barnett v. Bailey, 956 F.2d 1036, 1039 (11th Cir. 1992) (citation omitted); see also FED. R. CIV. P. 12(h)(3) ("If the court determines at any time that it lacks subject matter jurisdiction, the court must dismiss the

---

[8] "A dismissal for lack of subject matter jurisdiction is not a judgment on the merits and is entered without prejudice." Orlando Reg'l Healthcare Sys., Inc., 524 F.3d at 1232 (citation omitted).

action."). The only proffered basis for subject matter jurisdiction for Xanadu's Amended Counterclaims is supplemental jurisdiction. Am. Countercls. ¶ 2.

Because there are no federal claims remaining, the case now contains only causes of action under state law. Accordingly, the Court must determine whether to exercise supplemental jurisdiction over Xanadu's state law claims. See 28 U.S.C. § 1367(a) ("[I]n any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution."); Carlsbad Tech., Inc. v. HIF Bio, Inc., 556 U.S. 635, 639 (2009) (citing 28 U.S.C. § 1367(a), (c)) (emphasis added) ("With respect to supplemental jurisdiction in particular, a federal court has subject-matter jurisdiction over specified state-law claims, which it may (or may not) choose to exercise. A district court's decision whether to exercise that jurisdiction after dismissing every claim over which it had original jurisdiction is purely discretionary."). The Eleventh Circuit Court of Appeals has noted that "if the federal claims are dismissed prior to trial, Gibbs strongly encourages or even requires dismissal of state claims." L.A. Draper & Son v. Wheelabrator-Frye, Inc.,

735 F.2d 414, 428 (11th Cir. 1984) (citing United Mine Workers v. Gibbs, 383 U.S. 715, 726 (1966)).

Because the Amended Counterclaims lack an independent basis for federal jurisdiction, the Court will decline to exert supplemental jurisdiction over them. Mason v. Alabama Farm Credit, ACA, No. CV-10-BE-2544-M, 2011 WL 13133746, at *9 (N.D. Ala. Sept. 27, 2011) ("[B]ecause the court has ruled that all federal claims are due to be dismissed, and the pleadings do not establish diversity jurisdiction, the court, in its discretion, chooses not to exercise supplemental jurisdiction over the remaining state law claims, including the state law claims asserted in the Counterclaim.") (citing Raney v. Allstate Ins. Co., 370 F. 3d 1086, 1088-89 (11th Cir. 2004)); see also Gibbs, 383 U.S. at 726-27 ("[I]f the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed . . . without prejudice and left for resolution to state tribunals.") (citations omitted)). Accordingly, Xanadu's Amended Counterclaims [Doc. 24] are **DISMISSED WITHOUT PREJUDICE** and Hall's Motion to Dismiss those Counterclaims is **DENIED AS MOOT**.

### III. CONCLUSION

For the foregoing reasons, It is hereby **ORDERED** that Defendant Xanadu Marketing, Inc.'s Amended Motion to Dismiss Plaintiff's Amended Class Action

Complaint [Doc. 25] is **GRANTED** based upon Rule 12(b)(1) for lack of subject matter jurisdiction. Plaintiff June Hall's Amended Complaint [Doc. 4] is **DISMISSED WITHOUT PREJUDICE** due to a lack of standing.

It is further **ORDERED** that Defendant Xanadu Marketing, Inc.'s Amended Counterclaims [Doc. 24] are **DISMISSED WITHOUT PREJUDICE** because of a lack of subject matter jurisdiction and Plaintiff June Hall's Motion to Dismiss Counterclaims [Doc. 18] and Motion to Dismiss Amended Counterclaims [Doc. 27] are **DENIED AS MOOT**.

The Clerk is **DIRECTED** to **CLOSE** this case.

**IT IS SO ORDERED** this 6th day of July, 2023.

_____
MARK H. COHEN
United States District Judge